UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

LORETTA WATKINS,                                        :

                       Plaintiff,                :

                                :  Case No.: 1:25-cv-04295- EK

       – against –                          :

                                :

                                :

MALEN & ASSOCIATES, P.C., HASHEM HUSSEIN,  ;

A&F PROCESS SERVICE d/b/a/ ALLIED PROCESS     :

SERVICE, and CAPITAL ONE, N.A.                     :

                        Defendants.            :

------------------------------------------------------------------- X


**<u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CAPITAL ONE'S
MOTIONS TO DISMISS</u>**

## Table of Contents

PRELIMINARY STATEMENT...................................................................................................1

STATEMENT OF FACTS.....................................................................................................2

ARGUMENT......................................................................................................................6

Capital One Committed Conversion When It Enforced a Void Judgment .........................6

Capital One Was Grossly Negligent By Repeatedly Ignoring Evidence That The Affidavit Of
Service Was False And The Judgment Was Void......................................................11

A.  Applicable Law....................................................................................................12

B.  Capital One Had a Duty of Care to Ms. Watkins. ...............................................12

C.  Capital One Was Recklessly Indifferent to Ms. Watkins' Rights........................15

D.  In The Alternative, Capital One Is Vicariously Liable For The Acts Of Its Attorneys. ..........22

Capital One's Conduct Was Materially Misleading and Its Arguments Misstate the Standard. ..... 23

CONCLUSION..................................................................................................................25

**Table of Authorities**

## Cases

*Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 967 N.E.2d 666 (2012) ........................ 24, 25, 26

*Bam Bam Entm't LLC v. Pagnotta*, 75 N.Y.S.3d 804 (Sup. Ct. Kings County 2018) ...... 12, 13, 15

*Bank Brussels Lambert, S.A. v. Intermetals Corp.*, 779 F. Supp. 741 (S.D.N.Y.1991) ............... 17

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 1991) .................... 27

*Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC,* 692 F.3d 42, (2d Cir. 2012) ................................................................................................................................... 20

*Belcastro v. Roman Cath. Diocese of Brooklyn, New York*, 213 A.D.3d 800 (App. Div. 2d Dep't 2023) ................................................................................................................................... 26

*Bennett v. State Farm Fire & Cas. Co.*, 161 A.D.3d 926 (2018) ........................................... 17, 20

*Borrerro v. Haks Grp., Inc.*, 165 A.D.3d 1216 (App. Div. 2d. Dep't 2018) ................................ 26

*Burks v. Gotham Process, Inc.,* No. 20-CV-1001, 2021 WL 9244380 (E.D.N.Y. Dec. 14, 2021) 7, 29

*Calixto v. A. Balsamo & Rosenblatt*, 244 A.D.3d 674 (2d Dep't 2025) .................... 17, 18, 20, 24

*Colorado Cap. v. Owens*, 227 F.R.D. 181 (E.D.N.Y. 2005) ..................................... 17, 18, 19, 25

*Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, No. 22-CV-6599 (JPO), 2025 WL 871637 (S.D.N.Y. Mar. 20, 2025) ...................................................................................................... 26

*Day v. Bach*, 87 N.Y. 56 (1881) .............................................................................................. 12, 14

*Di Ponzio v. Riordan*, 89 N.Y.2d 578 (1997) ............................................................................... 18

*Donohue v. Copiague Union Free School Dist.,* 64 A.D.2d 29 (2d Dep't 1978) .......................... 18

*Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456 (2018) ................................................. 19

*Dubai Islamic Bank v. Citibank, N.A.,* 126 F.Supp.2d 659 (S.D.N.Y. 2000 ................................ 17

*Edmondson v. Raniere*, 751 F. Supp. 3d 136 (E.D.N.Y. 2024) ................................................... 17

*Employers' Fire Ins. Co. v. Cotten*, 245 N.Y. 102 (1927) ........................................................... 11

*Era Realty Co. v. RBS Properties*, 185 A.D.2d 871 (App. Div. 2d Dept. 1992) .......... 7, 12, 14, 15

*Fed. Ins. Co. v. Int'l Bus. Machines Corp.*, 18 N.Y.3d 642 (2012) ............................................. 19

*Feinstein v. Bergner*, 48. N.Y. 2d 234 (1979) ............................................................................... 6

*Fils-Aime v. Ryder TRS Inc.*, 40 A.D.3d 917 (App. Div. 2d Dept. 2007) ................................... 27

*Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330 (1999) ............................................... 28

*Gomez v. Resurgent Capital Servs., LP*, 129 F.Supp.3d 147 (S.D.N.Y. 2015). .................... 25, 28

*Guzman v. Mel S. Harris & Assocs. LLC*, 2018 WL 1665252 (S.D.N.Y. Mar. 22, 2018) .......... 29

*Hanover Ins. Co. v. D & W Cent. Station Alarm Co.*, 560 N.Y.S.2d 293 (1st Dep't 1990) .......... 24

*Hawkins-El v. First American Funding*, 891 F. Supp. 2d 402 (E.D.N.Y. 2012) ......................... 17

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.,* 37 N.Y.3d 169 (2021) ............................................................................................................... 28

*Hunter v. Palisades Acquisition XVI, LLC,* 16 Civ. 8779, 2017 WL 5513636 (S.D.N.Y. Nov. 16, 2017) ............................................................................................................... 16, 28, 29

*Kazanoff v. United States*, 945 F.2d 32 (2d Cir. 1991) ............................................................... 18

*Kerr v. Mount*, 28 N. Y. 659 (1864) ............................................................................................ 12

*King v. Crossland Savings Bank*, 111 F.3d 251 (2d Cir. 1997) .................................................. 18

*Kirschner v. KPMG LLP*, 15 N.Y.3d 446 (2010) ....................................................................... 28

*Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940 (2012) .................................................... 29

*Le Febvre v. New York Life Ins. & Annuity Corp.*, 214 A.D.2d 911(App. Div. 1st Dept. 1995) .. 11

*Lesnick & Mazarin v. Cutler*, 255 A.D.2d 367 (2d Dep't 1998) ................................. 21
*Lindor v. Palisades Collection, LLC*, 30 Misc. 3d 754 (Sup. Ct. 2010) ...................................... 17
*Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685 (S.D.N.Y. 2015) .................................... 29, 30
*Mazart v. State*, 441 N.Y.S.2d 600 (Ct. Claims 1981) ................................................. 27
*McMullen v. Arnone*, 79 A.D.2d 496 (App. Div. 2d Dept. 1981) ............................................. 12
*Meisel v. Grunberg*, 651 F. Supp. 2d 98 (S.D.N.Y. 2009) ................................................. 27
*Mendel Spira v. Capital One Bank, et. al.*, 19-cv-02624 (PKC) (RER) (E.D.N.Y. 2019). .......... 13
*Morales v. Kavulich*, 294 F. Supp. 3d 193 (S.D.N.Y. 2018) ................................................ 30
*Morrow v. MetLife Invs. Ins. Co.*, 177 A.D.3d 1288, (App. Div. 4th Dep't 2019) ..................... 26
*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13 (S.D.N.Y. 2009) .......................................................................................................... 19
*Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522 (S.D.N.Y. 2013) ................. 14, 15, 28
*Onfroy v. L. Offs. of Geoffrey T. Mott, P.C.*, 751 F. Supp. 3d 195 (E.D.N.Y. 2024) .................. 26
*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20 (1995) .......................................................................................................... 28
*Polanco v. NCO Portfolio Mgmt.* 132 F. Supp. 4 567 (S.D.N.Y. 2015) ............................. 11, 15
*Rejuvenating Fertility Ctr., PLLC v. TD Bank, N.A.*, No. 1:23-CV-05973 (JLR), 2025 WL 588570 (S.D.N.Y. Feb. 24, 2025) ...................................................................... 20
*Rosenberg v. Equitable Life Assur. Socy. of U.S.*, 79 N.Y.2d 663 (1992) ................................ 25
*Royal Zenith Corp. v. Continental Ins. Co.*, 63 N.Y.2d 975 (1984) ...................................... 12
*Ryan v. IM Kapco, Inc.*, 88 A.D.3d 682 (2d. Dept. 2011) ................................................. 17
*Schmidt v. Bishop*, 779 F. Supp. 321 (S.D.N.Y. 1991 ................................................... 26
*Shimunov v. Ashirov*, 238 A.D.3d 1088 (2025) ......................................................... 25
*Siegel v. Northern Blvd. & 80th St. Corp.*, 31 A.D.2d 182 (App. Div.1st Dept.1968)....... 12, 14, 15
*Somerset v. Stephen Einstein & Assocs., P.C.*, 351 F. Supp. 3d 201 (E.D.N.Y. 2019) ............... 30
*Stanford v. Kuwait Airways Corp.*, 89 F.3d 117 (2d Cir.1996)) ........................................... 18
*Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21 (E.D.N.Y. 2025) ......................................... 20
*Sykes v Mel Harris and Assoc., LLC*, 757 F Supp 2d 413 (S.D.N.Y. 2010) .............................. 29
*Texidor v. Tromberg, Morris, and Poulin, PLLC*, 2023 WL 8043067 (E.D.N.Y. 2023) .... 7, 29, 30
*United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351 (2d Cir. 1993) ...................................... 26
*United States v. Wiseman*, 445 F.2d 792 (2d Cir. 1971) ................................................. 13
*Veal v. Geraci*, 23 F.3d 722 (2d Cir.1994) ........................................................... 21
*Velázquez v. Thompson*, 451 F.2d 202 (2d Cir. 1971) ................................................. 13
*Verizon New York, Inc. v. 50 Varick LLC*, 54 Misc. 3d 1214(A) (N.Y. Sup. Ct. 2017).............. 25
*Villalba v. Houslanger & Assocs., PLLC*, No. 19-CV-4270, 2022 WL 900538, at *17 (E.D.N.Y. Mar. 28, 2022)..................................................................................... 29
*Wexselblatt v. Bank of Boston Int'l*, 666 F. Supp. 513 (S.D.N.Y. 1987).............................. 19
*White v. City of Mount Vernon*, 221 A.D.2d 345 (App. Div. 2d Dept. 1995) ............................ 11
*Winslow v. Forster & Garbus*, LLP, 2017 WL 6375744  (E.D.N.Y. Dec. 13, 2017) ................. 30
*Witherwax v. Transcare*, 801 N.Y.S.2d 782 (N.Y. Sup. Ct. 2005)......................................... 18
*Yuille v. Uphold HQ, Inc.*, 686 F. Supp. 3d 323 (S.D.N.Y. 2023)......................................... 24

**Statutes**

22 NYCRR 1200.1.2.................................................................................. 20

**Treatises**

2A N.Y. Jur. 2d Agency § 1.3.......................................................................... 26
Restatement (Third) of Agency, § 1.

## PRELIMINARY STATEMENT

New York's rules of service are rooted in the right to due process and exist to ensure that people know about the lawsuits against them. *Feinstein v. Bergner*, 48. N.Y. 2d 234 (1979). Over the last 20 years, however, defendants in consumer credit collection actions have been systemically denied the right to be heard because of purposefully improper service. The practice is so widespread it has been given its own term, "sewer service," likening it to the act of process servers throwing papers into the sewer rather than delivering them to defendants. The reason purposeful improper service is so widespread is because it allows plaintiffs to obtain default judgments, which are extremely valuable. On default, a plaintiff can get a judgment for any amount they chose to demand in a complaint. And once they have a default judgment, a plaintiff can garnish wages, freeze a bank account, or put a lien against property. Plaintiffs and their law firms can use these enforcement tools to coerce defendants to pay debts they do not owe, or pay more than they believe they owe, all without having to prove their case in court.

Ms. Watkins is the victim of one such scheme. Capital One took a default judgment against Ms. Watkins based on a false affidavit from process server Hashem Hussein ("Hussein"). This affidavit described service on a fictional relative made at a time that could not have been possible based on the process server's sworn affidavits of service in other cases. After obtaining the default judgment, Capital One levied against Ms. Watkins, seizing unclaimed funds at the Comptroller's Office. Ms. Watkins challenged the judgment and presented evidence that showed the affidavit of service - and many others - had been fabricated. Despite overwhelming evidence of fraudulent service, Capital One pressed on, opposing Ms. Watkins' request to vacate and only dismissing the case on the eve of the traverse hearing where Hussein would take the stand. Hussein's improper conduct is out in the open: his affidavits describe service at times and

1

locations that are impossible, and he has claimed to perform substitute service in a shocking 100 percent of cases. Capital One is aware of Hussein's misconduct because Ms. Watkins and other consumers have repeatedly raised issues with service in his cases and because Capital One has been affirmatively sued based on his improper service.

Capital One now challenges whether Ms. Watkins has stated a claim for her conversion, gross negligence, negligence *per se*, and General Business Law §349 ("GBL §349") claims.[1] Capital One first argues that there can be no conversion because there was no demand for and refusal to return the property. But the demand and refusal requirement applies when the initial possession was unlawful, Capital One was a converter *ab initio* when it levied pursuant to a judgment that was void for lack of personal jurisdiction. *Era Realty Co. v. RBS Properties*, 185 A.D.2d 871, 873 (App. Div. 2d Dept. 1992). Next, Capital One argues that there is no claim for gross negligence because it owes no duty to Ms. Watkins. But creditors in New York owe a duty of reasonable care when collecting debts and Capital One acted recklessly towards Ms. Watkins when it repeatedly ignored the evidence of sewer service. Finally, Capital One argues that a GBL §349 claim cannot lie because its conduct was not materially misleading. But courts have consistently agreed that sewer service schemes like the one at issue here are materially misleading. *Texidor v. Tromberg, Morris, and Poulin, PLLC,* 2023 WL 8043067 at *7 (E.DN.Y. 2023); *Burks v. Gotham Process, Inc.,* No. 20-CV-1001, 2021 WL 9244380, at *5-6 (E.D.N.Y. Dec. 14, 2021). Capital One's motion to dismiss must be denied.

## <u>STATEMENT OF FACTS</u>

On March 24, 2023, Capital One sued Ms. Watkins in Queens County Civil Court, seeking to collect on an alleged credit card debt. Complaint ¶ 14. As the creditor, client, and

---

[1] Ms. Watkins withdraws her claim for negligence *per se*.

party to the lawsuit, Capital One determined objectives and made substantive decisions in the litigation. Compl. ¶¶ 5–7. It made the decision to hire Malen & Associates, P.C. as its attorneys for the Civil Court case. *Id.* Capital One and Malen then contracted Allied Process Service and Hashem Hussein to execute an affidavit of service. A month after filing suit, on April 25, 2023, Hussein executed an affidavit falsely stating that he completed service at 6:16 AM on April 7, 2023 at 144-78ᵗʰ Street, Jamaica, NY 11434 by handing the Summons and Complaint to a fictional family member named "Isaiah Watkins." *Id.* ¶ 31. Capital One, through its attorney, filed Hussein's fabricated affidavit of service on May 3, 2023. *Id.* ¶ 15. With the false affidavit of service on file with the court, Capital One employee Marva Hinton filled out and signed a template affidavit of facts regarding Ms. Watkins' account, "demand[ing] judgment against Defendant." *Id.* Ex. F, at PageID 186-87. On June 14, 2023, Capital One and Malen, applied for a default judgment, which relied on the false affidavit of service to establish that Ms. Watkins had been served and defaulted, and that Capital One was "entitled to judgment by default." *Id.* Ex. C, PageID 35. The Court entered judgment on April 18, 2024. *Id.* Ex. D. Ms. Watkins was not served with the judgment and did not learn of this case until around August 2024, when a CAMBA Legal Services attorney representing her in another matter searched the New York court system's online database and notified her. *Id.* at ¶ 18. Unbeknownst to Ms. Watkins, in September or October of 2024, Capital One and Malen enforced on the judgment by seizing unclaimed funds in Ms. Watkins name that were being held in trust for her by the New York State Comptroller's Office. *Id.* at ¶ 94.

Ms. Watkins is a senior citizen who resides alone. *Id.* ¶ 25. She does not have any family members named Isaiah, nor has she ever had anyone in her home matching the description in Hussein's affidavit. *Id.* ¶ 35. Her two children are decades older than "Isaiah Watkins" was

alleged to be, and neither of them lived in Queens. *Id.*

On May 2, 2023, the very same day that Capital One filed the affidavit of service in Ms. Watkins's case, they also filed one in *Capital One v. Richard Walburg*, in which Hussein claimed to have served "Jennifer Walburg" at 6:12a.m., at 172-14 133rd Ave., Apt. 9A, Jamaica, NY 11434. *Id.* ¶ 26. But that address is a 30 minute drive from Ms. Watkins' address, so service could not have been effected a mere 4 minutes before "Isaiah Watkins" was served. *Id.* On May 3, 2023, Capital One and Malen filed an affidavit of service in *Capital One v. Kevin Campbell*, in which Hussein claimed to have served "Brenda Campbell" on April 7, 2023 at 6:29 a.m., at 9029 139th Street, Jamaica, NY 11435. *Id.* ¶ 40. This attempt at service is also impossible, the drive alone takes 18 minutes, and that does not take into account the time it would have taken Hussein to leave Ms. Watkins's address, walk to his car, fill out his logbook, find the new address, find parking, leave his car, knock on the door, and speak with the occupant. *Id.* ¶ 41.

This impossible service is not a one-off occurrence—Hussein has a practice of swearing to perform service on addresses too far apart for service to be possible and universally claiming to perform substitute service. In preparing Ms. Watkins' Order to Show Cause to vacate the default judgment, CAMBA Legal Services reviewed 41 of Hussein's Affidavits of Service in other cases. *Id.* ¶ 27. Hussein swore to substitute service in every single case reviewed. *Id.* In all but five of the cases, he swore to substitute service on a family member with the same last name as the defendant in the case. *Id.* ¶ 28. In no case did he perform personal service on the defendant, and in no case did he perform affix and mail service. *Id.* ¶ 29. Of the 41 affidavits, there were zero instances where no person was home and zero instances where he was able to serve the defendant. *Id.*

Ms. Watkins filed her Order to Show Cause on March 6, 2025, laying out this evidence.

4

In response, Capital One and its attorneys opposed and refused to vacate the judgment. On April 22, 2025, the Court granted Ms. Watkins's Order to Show Cause and ordered a hearing on service at which Hussein would have to testify. Capital One attorneys repeatedly emphasized that Capital One intended to proceed. *Id.* ¶ 57. They finally agreed to discontinue the case the day before the hearing. *Id.* ¶ 59. The parties entered into a stipulation on June 3, 2025, and about a month later Malen returned the seized unclaimed funds via check in the amount of $269.06. *Id.* ¶ 95–96 & Exs. I, J.

In preparation for the traverse hearing, CAMBA Legal Services subpoenaed and received Hussein's process serving records. His spreadsheet contained the service information for 3,525 lawsuits Hussein claimed to have served between October 3, 2022 and September 25, 2023. *Id.* ¶ 60. More than 2,000 of these were cases brought by Capital One. *Id.* ¶ 71. In all 3,525 cases, Hussein claimed to perform service on the first attempt on a person of suitable age and discretion. *Id.* ¶ 63. He never made an attempt when no one was home or when the defendant was home. *Id.* ¶ 64. More than three-quarters of the service occurred between the hours of 6 AM and 7 AM each day. *Id.* ¶ 65.

By the time Capital One refused Ms. Watkins' request to discontinue the case, it had received repeated notice of Hussein's sewer service. In 2019, Capital One, Malen, and Hussein were all sued for improper service in *Mendel Spira v. Capital One Bank,* et. al., 19-cv-02624 (PKC)(RER)(E.D.N.Y. 2019). In 2024, well before Ms. Watkins' Order to Show Cause three defendants in cases brought by Capital One had disputed service on the ground that that no one in their household matched the description of the person alleged to have been served. *Id.* ¶¶ 77-79. For instance, on June 17, 2024, Irina Mednik filed a motion to dismiss swearing that the person Hussein claimed to have served did not exist and that she and her minor daughter were

the only people home at the alleged time of service. *Id.* ¶ 78. On August 28, 2024, Sergey Izbash filed an Order to Show Cause swearing that the person Hussein claimed to have served did not exist *Id.* ¶77. Also on August 28, 2024, Dornella Nedd filed an Order to Show Cause making the same claim. *Id.* 79. Instead of taking care to examine the arguments and evidence put forth by these defendants, Capital One and Malen continued to pursue them on likely invalid judgments. And even knowing that multiple other defendants had independently attested to the same misconduct by Hussein, they still refused to vacate the judgment against Ms. Watkins.

## ARGUMENT
### Capital One Committed Conversion When It Enforced a Void Judgment

"A cause of action for conversion requires a showing that a defendant exercised unauthorized dominion over the plaintiff's property to the exclusion of the plaintiff's rights." *White v. City of Mount Vernon*, 221 A.D.2d 345, 346 (App. Div. 2d Dept. 1995). Capital One committed conversion when it took money from Ms. Watkin's unclaimed funds pursuant to a void judgment that Capital One obtained through sewer service. Capital One argues that it did not commit conversion for three reasons: 1) the judgment was lawful, 2) Ms. Watkins never made a demand for the return of the funds and, 3) that the funds were returned pursuant to a stipulation which should control the disposition of the funds. Capital One's first two arguments are linked. When the underlying possession is lawful, a demand by the plaintiff and refusal to return the property by the defendant is necessary for a claim of conversion. *Id.* Under this framework, the demand and refusal to return turns the possession from lawful to unlawful. *Employers' Fire Ins. Co. v. Cotten*, 245 N.Y. 102, 105 (1927). But Capital One ignores the other side of the analysis: when the underlying possession is unlawful, demand is not necessary for a claim of conversion. *Le Febvre v. New York Life Ins. & Annuity Corp.,* 214 A.D.2d 911, 913 (App. Div. 1st Dept. 1995); *Polanco v. NCO Portfolio Mgmt.* 132 F. Supp. 3d 567, 588 (S.D.N.Y.

6

2015).

The judgment against Ms. Watkins was obtained through improper service and was not lawful. Because service was not effected, the court never had jurisdiction and all the proceedings and the default judgment were null and void. *McMullen v. Arnone*, 79 A.D.2d 496 (App. Div. 2d Dept. 1981); *McMullen v. Arnone*, 79 A.D.2d 496 (App. Div. 2d Dept. 1981). And enforcing on a void judgment is conversion *ab initio*, with the converters "liable for the consequences of their acts as if the judgment and execution never existed." *Era Realty Co. v. RBS Properties*, 185 A.D.2d 871, 873 (App. Div. 2d Dept. 1992); *see also Day v. Bach*, 87 N.Y. 56, 61 (1881). This rule is centuries old—as the New York Court of Appeals held in 1864, "[a] process being void, the party who sets it in motion, and all persons aiding and assisting him, are *prima facie* trespassers, for seizing property under it." *Kerr v. Mount,* 28 N. Y. 659 (1864); *see also*, *e.g.,* *Siegel v. Northern Blvd. & 80th St. Corp.,* 31 A.D.2d 182, 186-187 (App. Div.1st Dept.1968)

*Era Realty* dispenses with Capital One's argument that it had a "lawful judgment." While the judgment in *Era Realty* was void for lack of subject matter jurisdiction, not lack of personal jurisdiction, that distinction makes no difference under *Era Realty's* holding. Both types of judgments are void at their inception, and in both cases the parties obtained the judgment through void process – in Capital One's case by engaging in improper service and in *Era Realty* by suing in the wrong court. *Id*; *McMullen,* 79 A.D.2d 496. Because the judgment was void at inception, Capital One became a converter *ab initio* when it enforced on it.

Capital One also argues that it is not liable for conversion because it enforced the judgment before it was aware of the improper service. But a judgment is void when a court lacks jurisdiction to enter it. The plaintiff's lack of knowledge, or good faith, does not matter under the rationale that a party levying on a debt levies at the risk that the debt is not proper. *Bam Bam*

7

*Entm't LLC v. Pagnotta*, 75 N.Y.S.3d 804, 808 (Sup. Ct. Kings County 2018).

Capital One's claim that it should not be liable for conversion due to its good faith or lack of knowledge that the judgment was invalid also improperly rests on its own factual allegation outside the four corners of Plaintiff's Complaint. The Complaint, which should be taken as true at this stage, alleges that Capital One was aware of the issues with Hussein's affidavits of service. There were at least three other instances of defendants filing requests for dismissal in cases involving Malen, Hussein and Capital One, each highlighting Hussein's improper service, and each giving Capital One notice of the improper service prior to the enforcement of the judgment in this action. Complaint ¶ 78-81. And all three parties were affirmatively sued for Hussein's improper service in 2019. *Mendel Spira v. Capital One Bank, et. al.,*19-cv-02624 (PKC)(RER)(E.D.N.Y. 2019).

Even now, after receiving Hussein's logbook which shows thousands of instances of service in Capital One cases all of which impossibly claim to have been effectuated by substitute service and many of which allege service at times and locations that are impossible, including two that show that service on Ms. Watkins was impossible, Capital One has pressed on. It has not sought to address the wrongdoing or vacate the improper judgments, choosing instead to keep its judgments and potentially garnish wages, freeze bank accounts or put liens on property. Sewer service is ignominious conduct that deprives defendants of due process. *Velázquez v. Thompson*, 451 F.2d 202, 204 (2d Cir. 1971); *United States v. Wiseman*, 445 F.2d 792, (2d Cir. 1971). And as discussed above, leviers levy at their own peril. *Bam Bam Entm't*, 75 N.Y.2d, at 808. If Capital One is going to collect on suspect judgments, then it bears the risk of committing conversion. Capital One's suggestion that it had no reason to suspect the affidavit of service was false is not borne out by the facts, but even without that knowledge Capital One would still be

liable for conversion for their actions because it enforced a default judgment obtained through void process. *Day*, 87 N.Y. at 61; *Era Realty*, 185 A.D.2d at 873*; Siegel*, 31 A.D.2d at 186-187.

Capital One's second argument is that Ms. Watkins failed to make a demand for the return of funds. As discussed above, a demand was not necessary because the judgment was void and unlawful.

Capital One's third argument is that the stipulation agreeing to return the funds "should control the disposition of the funds at issue," and preclude a conversion claim. Capital One does not cite any cases or statutes in support of this argument. It is not clear how the existence of a stipulation as the mechanism for returning money makes it different than if they had just returned the money without a stipulation. The stipulation contains no special language with respect to conversion, just the form statement that they are to release any restraints and return any funds. Compl. Ex. I. The eventual return of the property does not absolve a party of liability for conversion. *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 534 (S.D.N.Y. 2013)\ (collecting cases). Capital One's unsupported claim that the stipulation removes them from liability has no basis in the caselaw and should be rejected.

In advancing its argument that the conversion claim should be dismissed, Capital One works through three cases cited in Ms. Watkins' premotion letter, all of which found conversion in the judgment enforcement context: *Okyere v. Palisades Collection, LLC, Hunter v. Palisades Acquisition XVI, LLC,* and *Polanco v. NCO Portfolio Mgmt. Inc..* (ECF No. 35.) Ms. Watkins had cited them to address Capital One's premotion argument that it had never exercised dominion over Ms. Watkins' property, (ECF No. 32), which it has abandoned in its motion.

Capital One argues that the cases are distinguishable because in all three the money was taken after the judgment was vacated, while in this case the conversion occurred before the

9

improper service claim was raised. As discussed, when a party enforces pursuant to void process they are a converter *ab initio*; the party's knowledge or alleged good faith makes no difference. *Era Realty*, 185 A.D.2d at 873; *Siegel*, 31 A.D.2d at 186-187, *Bam Bam Entm't*, 75 N.Y.2d, at 808. The fact that *Okyere, Hunter,* and *Polanco* involved post-vacatur enforcement has no bearing on the well-established principle involved in this case- enforcing pursuant void judgment is conversion in the first instance.

Indeed, *Polanco* supports that principle, and Capital One's description of that case is eyebrow raising because it is wrong on both the facts and the holding. In *Polanco*, a debt buyer enforced on a default judgment obtained through alleged sewer service. The consumer filed an order to show cause to vacate the judgment, which was granted with an order requiring the return of the money taken. The money was not returned, and Polanco had to go back to court to get a second order before the money was released. *Polanco*, 132 F. Supp. 3d. at 570-576. But the *Polanco* court explicitly held that if the jury found that sewer service occurred, the conversion would have been initiated when NCO first took Polanco's funds and the demand and refusal rule would not apply. *Id* at 589. The *Polanco* court relied on cases holding that conversion occurs when a taking is made pursuant to a court order obtained through fraud, not the void judgment jurisprudence cited by Ms. Watkins, but that does not change the analysis. If a judgment is void, conversion occurs at enforcement. *Id*.

Like *Polanco*, *Okyere* involved a plaintiff who had their bank account restrained pursuant to a judgment obtained through improper service. *Okyere*, 961 F. Supp. 2d at 526. Mr. Okyere filed an order to show cause to vacate the judgment and the court stayed enforcement. On the return date, an order was issued to release the restraint and to return any funds. *Id*. The day after the order was issued, the *Okyere* defendants took $2,371.78 from Mr. Okyere's bank account. *Id.*

The plaintiff contended, and the court agreed, that the debt collector's seizure of the funds after the order requiring their return was conversion. The decision was silent on whether there was conversion when the account was first restrained. Similarly, in *Hunter*, the plaintiff had enforced on a vacated judgment. Capital One contends that because the funds in *Okyere* and *Hunter* were obtained after the order authorizing possession was vacated, and thus not lawful, that the opposite must be true and obtaining funds pursuant to an unvacated order is lawful. Capital One's argument is fallacy: just because a court says one course of conduct is unlawful does not make a different, unaddressed, course of conduct lawful. In addition, the decision in *Hunter* is focused on question of vicarious liability that is not at issue here. *Hunter v. Palisades Acquisition XVI, LLC,* 16 Civ. 8779, 2017 WL 5513636 (S.D.N.Y. Nov. 16, 2017).

Capital One knew or should have known they had an issue with Hashem Hussein engaging in improper service.  In spite of this, it continued to use him to serve process in thousands of cases resulting in numerous default judgments. New York law makes Capital One liable for enforcement of this void process and Ms. Watkins has stated a claim for conversion.

**<u>Capital One Was Grossly Negligent By Repeatedly Ignoring Evidence That The Affidavit Of Service Was False And The Judgment Was Void.</u>**

Capital One's actions in obtaining the void judgment against Ms. Watkins—and its subsequent failure to vacate that judgment and discontinue the case—constituted gross negligence. Had it exercised even the slightest care or diligence, Capital One would have realized that the court lacked jurisdiction, and that the entire proceedings against Ms. Watkins were invalid. Instead, it recklessly turned a blind eye to the ample evidence presented by Ms. Watkins that she was never served and the affidavit of service was fabricated. Capital One moves to dismiss for two reasons: it argues that it owed no duty to Ms. Watkins and that it did not

11

engage in reckless conduct. The Complaint demonstrates otherwise.

## A. Applicable Law

Gross negligence "differs in kind, not only degree, from claims of ordinary negligence." *Bennett v. State Farm Fire & Cas. Co.*, 161 A.D.3d 926, 929 (2018) (citation omitted). "To constitute gross negligence, a party's conduct must smack of intentional wrongdoing or evince a reckless indifference to the rights of others." *Calixto v. A. Balsamo & Rosenblatt*, 244 A.D.3d 674, 677 (2d Dep't 2025) (quoting *Ryan v. IM Kapco, Inc.*, 88 A.D.3d 682, 683)). "A party is grossly negligent when it fails to exercise even slight care ... or slight diligence." *Id.* (quoting *Ryan*, 88 A.D.3d at 683). The other three elements of a gross negligence claim are: (1) the existence of a duty; (2) a breach of that duty; (3) injury as a result thereof. *Edmondson v. Raniere*, 751 F. Supp. 3d 136, 193 (E.D.N.Y. 2024).

## B. Capital One Had a Duty of Care to Ms. Watkins.

Under New York law, creditors and debt collectors owe a duty of care in the collection of debts and in the conduct of debt collection litigation. *Calixto v. A. Balsamo & Rosenblatt* 244 A.D.3d at 677 (App. Div. 2d Dep't 2025) (all elements of gross negligence claim sufficiently alleged against landlord and its attorneys who had sued a tenant to collect arrears); *Hawkins-El v. First American Funding*, 891 F. Supp. 2d 402 (E.D.N.Y. 2012) ("creditors and debt collectors owe debtors 'a duty of reasonable care in the collection of their debts'"); *Colorado Cap. v. Owens*, 227 F.R.D. 181, 189 (E.D.N.Y. 2005) (credit card issuers owe "a duty of care in the collection of their debts") (citing *Dubai Islamic Bank v. Citibank, N.A.,* 126 F.Supp.2d 659, 667 (S.D.N.Y. 2000) ("banks owe a duty of care to their customers")); *Bank Brussels Lambert, S.A. v. Intermetals Corp.,* 779 F. Supp. 741, 747 (S.D.N.Y.1991) (bank "had a duty to exercise reasonable skill and care in carrying out its activities for its customer....")); *Lindor v. Palisades*

*Collection, LLC*, 30 Misc. 3d 754, 761 (Sup. Ct. 2010) (debt collector "owe[d] a duty to take reasonable steps in performing their work"); *Witherwax v. Transcare*, 801 N.Y.S.2d 782 (N.Y. Sup. Ct. 2005) (consumer stated claim for negligence against creditor for debt collection conduct, implying duty); *see also King v. Crossland Savings Bank,* 111 F.3d 251, 259 (2d Cir. 1997) (affirming district court decision that had agreed "that banks do, in fact, owe a duty of care to their customers ...").

A duty of care exists when society "imposes an obligation on one [party] to protect the other from an unreasonable risk of harm." *Colorado Cap.*, 227 F.R.D. at 188 (quoting *Stanford v. Kuwait Airways Corp.*, 89 F.3d 117, 123 (2d Cir.1996)) Whether a party bears a duty of care is a question of law, to be answered based on a range of factors, including the relationship between the parties, the reasonably foreseeable risks of harm, and the public policy consequences of finding a duty. *Di Ponzio v. Riordan*, 89 N.Y.2d 578, 583(1997); *Kazanoff v. United States*, 945 F.2d 32, 37 (2d Cir. 1991); *Donohue v. Copiague Union Free School Dist.,* 64 A.D.2d 29, 32–33 (2d Dep't 1978).

Capital One is a federally insured bank and credit card issuer with billions of dollars in assets, which chose to use the court system to obtain a default judgment against an elderly, disabled, fixed-income New Yorker. While a creditor is entitled to seek to collect on a debt it reasonably believes it is owed, society expects that creditor to take care to avoid unreasonable harm to the consumers it is pursuing. *See supra.* This means that when a creditor elects to make use of the state enforcement power by filing suit and then seeking and enforcing a judgment, it must take care to ensure it is authorized to do so. The Appellate Division, Second Department, for example, recently recognized a duty on the part of a landlord and its attorneys to take care that, when suing a putative debtor, the amount they sought was correct and that the judgment

13

they sought was authorized by law. *See Calixto*, 244 A.D.3d at 677.

Capital One has identified no public policy reasons or applicable precedents to support its claim that it has no such duty of care. Instead, Capital One relies on inapplicable cases holding that banks do not owe a *fiduciary* duty to their customers, which is higher standard of care than that at issue here. (Def. Mem. at 7 (citing *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 26-27 (S.D.N.Y. 2009) (finding that "banks do not owe *fiduciary* duties to customers or non-customers in a deposit or lending relationship") (emphasis added); *Miyamoto v. Bank of Am., N.A.*, No. 19-CV-445, 2020 WL 5577730, at *3 (E.D.N.Y. Sept. 17, 2020) (quoting *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 236 (E.D.N.Y. 2013)) ("a lender is not in a *fiduciary* relationship with a borrower, and thus a lender does not owe a borrower any *special duties*.'") (emphasis added). But a fiduciary duty only exists where one party has reposed confidence and trust in the other, resulting in superiority and influence on the other, obligating the latter to act for the benefit of the former. *Fed. Ins. Co. v. Int'l Bus. Machines Corp.*, 18 N.Y.3d 642, 649 (2012). That is a higher and distinct standard of care from the duty of care at issue in a negligence claim, *see id.*; *Colorado Capital*, 227 F.R.D. at 189, so *Musalli* and *Miyamoto* are inapplicable here. Ms. Watkins does not claim Capital One owes her any such special duty, only an ordinary duty of care to avoid unreasonable foreseeable risks of harm.

Capital One also cites *Wexselblatt v. Bank of Boston Int'l*, 666 F. Supp. 513, 517 (S.D.N.Y. 1987), in which a court dismissed a depositor's negligence claim against a bank because the relationship was "purely contractual." and a gross negligence claim cannot be based on a purely contractual duty. *See id. Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 460 (2018). The dismissed claim in *Wexselblatt* was premised on the bank's alleged failure to comply

14

with the consumer's request to withdraw and transfer funds—duties squarely within the scope of the parties' deposit agreement. *See also, e.g.*, *Rejuvenating Fertility Ctr., PLLC v. TD Bank, N.A.*, No. 1:23-CV-05973 (JLR), 2025 WL 588570, at *5 (S.D.N.Y. Feb. 24, 2025). So, *Wexselblatt* and cases like it are inapposite. Capital One's duty to take reasonable care in the collection of debts does not arise out of the parties' contract, but rather out of social, economic, and policy considerations, as determined by New York courts.

**C.     Capital One Was Recklessly Indifferent to Ms. Watkins' Rights.**

Capital One egregiously breached that duty, failing to exercise even slight care or diligence in using the court system to collect the alleged debt from Ms. Watkins. *Calixto.* And it did so repeatedly, ignoring on multiple occasions the evidence that Hussein's affidavit of service was false, that the court lacked jurisdiction, and that the judgment was void. This conduct demonstrated reckless indifference to Ms. Watkins' rights and states a claim for gross negligence. *Id.*; *see also Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 99 (E.D.N.Y. 2025) (gross negligence has been found where "several acts of negligence with foreseeably cumulative effect.")))

Whether conduct was recklessly indifferent or smacks of intentional wrongdoing is generally a question of fact., 161 A.D.3d at 929 (2018). Recklessness in the context of a gross negligence claim means "an extreme departure from the standards of ordinary care," such that "the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC,* 692 F.3d 42, 61–62 (2d Cir. 2012) (citation omitted).

Here, Capital One decided to file suit against Ms. Watkins and retained Malen & Associates to do so. As the creditor, client, and party to the lawsuit, Capital One determined

objectives and made substantive decisions in the litigation, *see* 22 NYCRR 1200.1.2, and it is charged with knowledge of all facts within the knowledge of its attorneys, *Veal v. Geraci,* 23 F.3d 722, 725 (2d Cir.1994); *Lesnick & Mazarin v. Cutler*, 255 A.D.2d 367, 367(2d Dep't 1998).

Capital One and Malen[2] then contracted Allied Process Service and Hussein to execute an affidavit of service—a key element of the litigation, because service of process is required to obtain jurisdiction, and an affidavit of service is required to obtain a default judgment. Hussein then fabricated the affidavit of service claiming he had served the fictional Isaiah Watkins at 6:16a.m. on April 7, 2023 at 144-78th Street, Jamaica, NY 11434.

On the same day it filed the affidavit of service in Ms. Watkins case Capital One and Malen also filed an affidavit of service in *Capital One v. Richard Walburg*, in which Hussein claimed to have served "Jennifer Walburg" at 6:12a.m., at 172-14 133rd Ave., Apt. 9A, Jamaica, NY 11434. But that address is 30 minutes from Ms. Watkins' address by car, so service could not have been effected a mere 4 minutes before "Isaiah Watkins" was served. Also on that same day, Capital One and Malen filed an affidavit of service in *Capital One v. Kevin Campbell*, in which Hussein claimed to have served "Brenda Campbell" on April 7, 2023 at 6:29 a.m., at 9029 139th Street, Jamaica, NY 11435, a mere 13 minutes after they purportedly served Ms. Watkins. That drive alone takes 18 minutes, not including the time it would have taken Hussein to leave Ms. Watkins's address, walk to his car, fill out his logbook, find the new address, find parking, leave his car, knock on the door, and speak with the occupant. Had Capital One and Malen taken even slight care to examine these affidavits of service, they would have seen that service on Ms. Watkins was impossible. Yet they filed the affidavits anyway.

With the false affidavit of service on file with the court, Capital One employee Marva Hinton

---

[2] *See* Compl. ¶ 7 ("when this Complaint references the liability of Malen it applies equally to Capital One").

then filled out and signed a template affidavit of facts regarding Ms. Watkins' account, "demand[ing] judgment against Defendant." Compl. Ex. F, at PageID 186-87. This affidavit is required under state law to obtain a default judgment. CPLR § 3215(f). Capital One and Malen then applied for a default judgment, which relied on the false affidavit of service to establish that Ms. Watkins had been served and defaulted, and that as a result Capital One was "entitled to judgment by default." Compl. Ex. C, PageID 35. Based on this, the Court entered judgment on April 18, 2024. Compl. Ex. D.

In the year and a half after obtaining this judgment, Capital One and Malen received further notice of Hussein's sewer service: On June 17, 2024, Irina Mednik filed a motion to dismiss similarly wearing that the person Hussein claimed to have served did not exist and that she and her minor daughter were the only people home at the alleged time of service. (Compl. 78.). On August 28, 2024, Sergey Izbash filed an Order to Show Cause swearing that the person Hussein claimed to have served did not exist *Id.* ¶ 77. Also on August 28, 2024, Dornella Nedd filed an Order to Show Cause making the same claim. (*Id.* ¶ 79.) Instead of taking care to examine the arguments and evidence put forth by these defendants, Capital One and Malen continued to pursue them on likely invalid judgments.

Then, in September or October of 2024, despite knowing that Ms. Watkins had also been purportedly served by Hussein and despite knowing of Hussein's misconduct, Capital One and Malen enforced the judgment by seizing unclaimed funds held in trust for Ms. Watkins with the New York State Comptroller's Office.

On March 6, 2025, Ms. Watkins filed an Order to Show Cause, which included voluminous evidence demonstrating that the affidavit of service had to be false. She specifically claimed that Isaiah Watkins did not exist, nor did any person resembling him, and the affidavit of

17

service was false. She also pointed out that it was impossible for service to have been effected, given the impossibly short transit times claimed in the affidavits of service on Ms. Campbell and Ms. Walburg. And third, she demonstrated that in a sample of 41 affidavits of service executed by Hussein for Capital One and Malen, every single one claimed substitute service—presenting a highly unlikely scenario in which on 41 separate occasions, there was someone at a defendant's house who was not a defendant.

Had Capital One and Malen taken even slight care to review her submission and the evidence, they would have realized that the affidavit of service was false and that the judgment was void. Instead of doing this, Capital One, through Malen, filed opposition to the Order to Show Cause that did not engage with Ms. Watkins' evidence or arguments. On the motion return date, even though Malen's own per diem appearance counsel agreed the evidence was overwhelming and refused to argue it, Capital One refused to agree to vacate and dismiss the case, ignoring yet another opportunity to fulfill its duty of reasonable care. (Compl. ¶ 52). The Court granted the order to show cause and scheduled a traverse hearing. Capital One still did not vacate the judgment, instead insisting that it would be moving forward while offering no substantive response to her evidence. In the weeks leading up to the traverse hearing, Hussein produced a spreadsheet listing his claims of service in 3,525 lawsuits—*every single one of which* claimed substitute service. Service was effected early in the morning, covered fantastical distances in impossibly short spans of time.

Had Capital One taken even the slightest care at any point during this time period to review the evidence, it would have realized the affidavit of service was false and did not provide the court with jurisdiction to enter a judgment. By not doing so for two years, despite being repeatedly presented with different forms of evidence showing that Hussein was fabricating

18

affidavits of service, it was recklessly indifferent to Ms. Watkins' rights. This is analogous to the conduct alleged in *Calixto*, where a landlord and its attorneys filed suit against a plaintiff for arrears she did not owe, and refused to discontinue the case in the face of undisputable evidence that the money was not owed and that they were not as a legal matter entitled to collect any rent. As the Second Department explained:

> "the complaint alleged that if the defendants had exercised even the slightest amount of due diligence, they would have realized that the amount they were seeking from the plaintiff was incorrect…and that the judgment amount that they demanded was not authorized by law. As such, the complaint sufficiently alleged the material elements of a gross negligence cause of action."

*Calixto*, 244 A.D.3d 674.

Courts have recognized, in other factual contexts, that a company's repeated disregard of evidence signaling a foreseeable risk of harm to a plaintiff can constitute gross negligence. In *Yuille v. Uphold HQ, Inc.*, 686 F. Supp. 3d 323, 353 (S.D.N.Y. 2023), for example, the court denied a motion to dismiss a gross negligence claim based on the defendant cryptocurrency company's decision to allow a transaction to proceed despite numerous red flags. The plaintiff had stated a claim because it had alleged Uphold "knew that there was a rise in hacking activity, was explicitly told about the potential security breach to the Account, and failed to act," leading to massive fraud. *Id.* Similarly, courts have upheld gross negligence claims against alarm companies that ignore evidence of security issues. *See, e.g.*, *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 967 N.E.2d 666, 669 (2012) ("defendants had knowledge—for weeks, if not months—that the equipment had been malfunctioning," "failed to investigate the source of their equipment malfunction," and "failed to put anyone at the branch on notice of the potential security breach"); *Hanover Ins. Co. v. D & W Cent. Station Alarm Co.*, 560 N.Y.S.2d 293, 295–96 (1st Dep't 1990)(denying summary judgment for defendant alarm company where the record indicated that the company received three signals over four hours, did not notify the police, and

19

directed the guard sent to investigate the issue to "forget the assignment" when he encountered difficulty entering the building). Capital One's indifference to the clear evidence of falsity when it filed the affidavit of service, followed by continuing to disregard Ms. Watkins' additional evidence, evinces the same type of "reckless indifference to the rights of others." *Abacus Fed Sav. Bank*, 18 N.Y.3d at 683–84.

Importantly, the actions and decisions that rise to the level of gross negligence were Capital One's, not just Malen's. The Complaint specifies that because Capital One and Malen were acting in concert, and because Capital One was acting through Malen, all references to Malen applied equally to Capital One. Compl. ¶ 2. In addition, Capital One took its own active steps to participate in the litigation, such as by preparing the affidavit of facts in order to obtain a default judgment. And it was Capital One who drove the litigation and was responsible for all substantive decisions, such as the decision to apply for a default judgment, to enforce the judgment, to oppose the Order to Show Cause, and to repeatedly refuse to vacate the judgment and discontinue the case. Those decisions cannot be delegated by a client to its counsel and Capital One may not disclaim liability by claiming they were. *See Shimunov v. Ashirov*, 238 A.D.3d 1088, 1089(2025); *Verizon New York, Inc. v. 50 Varick LLC*, 54 Misc. 3d 1214(A), 54 N.Y.S.3d 613 (N.Y. Sup. Ct. 2017) ("since a party cannot pass on a nondelegable duty, it cannot insulate itself from liability caused by another's breach of that duty" (citing *Rosenberg v. Equitable Life Assur. Socy. of U.S.,* 79 N.Y.2d 663, 668 (1992)). Ms. Watkins' allegations that Capital One actively prosecuted this lawsuit and took its own grossly negligent actions make this case distinguishable from cases in which a creditor has only been vicariously liable for non-litigation conduct by a debt collector that it had the right to control, but that it was not

necessarily actively involved. *See, e.g. Colorado Capital*, 227 F.R.D. at 189-90; *Gomez v. Resurgent Capital Servs., LP*, 129 F.Supp.3d 147 at 152 (S.D.N.Y. 2015).

      This court has previously dismissed a gross negligence claim because "intentional conduct…cannot form the basis of a claim founded on negligence." *Onfroy v. L. Offs. of Geoffrey T. Mott, P.C.*, 751 F. Supp. 3d 195, 205 (E.D.N.Y. 2024) (quoting *Morrow v. MetLife Invs. Ins. Co.*, 177 A.D.3d 1288, (App. Div. 4th Dep't 2019)). But the New York cases in which that principle arose involved simultaneously asserted ordinary negligence claims and assault or battery claims, which require intentional physical contact. *See, e.g., Borrerro v. Haks Grp., Inc.*, 165 A.D.3d 1216, (App. Div. 2d. Dep't 2018); *United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993); *Schmidt v. Bishop*, 779 F. Supp. 321, 324 (S.D.N.Y. 1991); Outside of that context, this rule cannot be squared with the well-established definition of gross negligence, which is "conduct that smacks of *intentional* wrongdoing and evinces a reckless indifference to the rights of others." *Abacus Fed. Sav. Bank*, 18 N.Y.3d at 684 (emphasis added); *see also Bayerische Landesbank*, 692 F.3d at 61–62. Appellate courts have accordingly permitted gross negligence claims based on allegations of intentional conduct that do not involve physical contact. For example, in *Belcastro v. Roman Cath. Diocese of Brooklyn, New York*, 213 A.D.3d 800, 802, (App. Div. 2d Dep't 2023), the Appellate Division, Second Department, agreed that a plaintiff sexual abuse victim had a gross negligence claim against a school and church who, he alleged, "knew of the sexual abuse and condoned it, covered it up, and *intentionally* failed to prevent it." *Belcastro*, 213 A.D.3d at 802 (emphasis added). And in *Bayerische Landesbank,* the Second Circuit allowed a gross negligence claim to proceed based on allegations that "appear[ed] to 'smack' of intentional wrongdoing" and demonstrated recklessness. 692 F.3d at 62 –65. *See also Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, No. 22-CV-6599 (JPO),

21

2025 WL 871637, at *9 (S.D.N.Y. Mar. 20, 2025) (denying a motion for summary judgment to dismiss a gross negligence claim where there was evidence that the defendant debt collector had "intentionally lied" to the plaintiff about his statutory rights)

Even if this court determines that allegations of intentional conduct are fatal to a claim for gross negligence, what Ms. Calixto has alleged is reckless indifference, not intentional conduct. While Hussein intentionally fabricated the affidavit of service, Capital One's tortious error lay in its reliance on that fabricated affidavit of service, despite overwhelming evidence that it was false, and its ongoing reckless disregard of that evidence and of Ms. Watkins' rights.

**D.     In The Alternative, Capital One Is Vicariously Liable For The Acts Of Its Attorneys.**

Capital One is directly liable for its own recklessness, as the party to the litigation and judgment creditor, who determined the substantive course of the lawsuit, made decisions as to resolution, and actively participated in obtaining and enforcing the judgment. But it is also, in the alternative, vicariously liable for gross negligence based on the conduct of its agents, Malen, Allied, and Hussein. A principal is liable for the tortious acts of its agent within the scope of the agency. *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 110 (S.D.N.Y. 2009). A principal-agent relationship exists when the principal consents to allow the agent to act on his behalf and subject to his control, and where the agent consents to so act.  Restatement (Third) of Agency, § 1.01; *Fils-Aime v. Ryder TRS Inc.*, 40 A.D.3d 917, 918 (App. Div. 2d Dept. 2007). The principal need only have the right to control the agent's conduct; it need not actually control every detail of the agent's conduct. *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1546 (S.D.N.Y. 1991); *Mazart v. State*, 441 N.Y.S.2d 600, 605 (Ct. Claims 1981); 2A N.Y. Jur. 2d Agency § 1.3. All knowledge acquired by the agent acting in the scope of its agency is imputed to the principal. *Meisel*, 651 F. Supp. 2d at 110.

Here, Malen was the freely chosen agent of Capital One, retained to collect the putative debt from Ms. Watkins via court proceedings. All of Malen's actions that form the nucleus of the Complaint were undertaken within the scope of that agency: filing suit, contracting a process server to execute an affidavit of service, filing an affidavit of service, obtaining a judgment, enforcing that judgment, and opposing the Order to Show Cause. As the client, Capital One was responsible for the substantive decisions made in the litigation. 22 NYCRR § 1200.1.2. It thus exercised control over Malen and is liable for its conduct in obtaining and defending the void judgment with reckless indifference to Ms. Watkins' rights. *See Hunter*, 2017 WL 5513636, at *9; *Gomez,*, 129 F. Supp. 3d at 157; *Okyere,*, 961 F. Supp. 2d at 516.

Finally, any attempt by Capital One to feign ignorance as to the knowledge of its attorneys that argument fails. A "fundamental principle that has informed the law of agency… for centuries [is that] the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals. *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (2010).

### Capital One's Conduct Was Materially Misleading and Its Arguments Misstate the Standard.

To state a claim under GBL §349 a plaintiff must plead that: (1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.,* 37 N.Y.3d 169 (2021). Capital One does not dispute the first or third elements, challenging only whether the conduct was materially misleading. To determine whether conduct is materially misleading, courts apply an objective standard that asks whether a defendant's actions are "likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Himmelstein*, 37 N.Y.3d at

23

178 (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999)); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). This standard does not require reliance, which is not an element of a claim under § 349. *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, (2012).

Capital One's motion correctly cites this objective standard but goes on to apply a subjective test, arguing that Ms. Watkins' claim must fail because she has not shown how the affidavit misled her and that it is unclear "how an action could materially mislead other consumers if it did not mislead the Plaintiff." While this may be confusing for Capital One, it has not been confusing for the courts applying the standard. Multiple courts have found that improper service is materially deceptive conduct under GBL § 349. *Texidor v. Tromberg, Morris, and Poulin, PLLC,* 2023 WL 8043067 at *7 (E.D.N.Y. 2023); *Burks v. Gotham Process, Inc.,* No. 20-CV-1001, 2021 WL 9244380, at *5-6 (E.D.N.Y. Dec. 14, 2021) (false statements in an affidavit of services are materially misleading because they impede a consumers ability to respond to debt collection.); *Guzman v. Mel S. Harris & Assocs. LLC*, 2018 WL 1665252, at *8, 12 (S.D.N.Y. Mar. 22, 2018); *Hunter* 2017 WL 5513636, at *8; *Mayfield v. Asta Funding, Inc*., 95 F. Supp. 3d 685 at 700 (S.D.N.Y. 2015); *Sykes v Mel Harris and Assoc., LLC*, 757 F Supp 2d 413, 428 (S.D.N.Y. 2010).

The decision in *Texidor* confronts Capital One's argument head on, holding that reasonable consumers do not know that false affidavits of service are invalid and will believe them, which will in turn inhibit them from challenging the invalid judgments against them. *Texidor,* 2023 WL 8043067 at *8. The same is true here. The affidavit of service was false, as were Capital One's continued representations that Ms. Watkins was properly served, and they were likely to mislead a reasonable consumer into believing that the suit was valid. *Guzman*,

24

2018 WL 1665252, at *12;*Villalba v. Houslanger & Assocs., PLLC,* No. 19-CV-4270, 2022 WL 900538, at *17 (E.D.N.Y. Mar. 28, 2022); *Hunter*2017 WL 5513636, at *8.

  Affidavits of service are official court documents sworn to under penalty of perjury and notarized. Reasonable consumers believe they are undertaken honestly and are confused when they describe people that do not exist. Consumers also are not in a position to unpack fraud by subpoenaing logbooks or comparing large batches of affidavits. They are not aware they are victims of a fraudulent service scheme and often simply acquiesce to the judgment and are thus misled. *Somerset v. Stephen Einstein & Assocs.*, P.C., 351 F. Supp. 3d 201, 207–08 (E.D.N.Y. 2019); *Winslow v. Forster & Garbus*, LLP, 2017 WL 6375744, at *13 (E.D.N.Y. Dec. 13, 2017)

  In *Morales v. Kavulich*, 294 F. Supp. 3d 193 (S.D.N.Y. 2018), the court examined a similar argument to the one presented here. Mr. Morales had his bank account frozen pursuant to an account restraint that relied on a non-existent judgment. *Id* at 197–198. He went to the bank to try to get the restraint lifted and sought legal assistance. *Id.* The defendants argued -like Capital One - that Mr. Morales' attempts to assert his rights showed that he was not misled. *Id.* The court in *Morale*s described this argument as "baseless" because a reasonable consumer would read the false account restraint and be misled into believing that a judgment existed and that the amount claimed was accurate. *Id*. The same is true here; a reasonable consumer would read the false affidavit of service, believe it, and would be inhibited from challenging the void judgment. As courts have repeatedly held sewer service is deceptive conduct under GBL § 349's objective standard. *Texidor v*2023 WL 8043067 at *8; *Mayfield*, 95 F. Supp. 3d at 700.

## CONCLUSION

  For the foregoing reasons, Ms. Watkins has stated claims for conversion, gross negligence, and violation of GBL § 349, and Capital One's motion to dismiss should be denied.

Dated: February 5, 2026

By: _Matthew Schedler, Esq._
CAMBA LEGAL SERVICES, INC.
Matthew Schedler, Of Counsel
Divya Subrahmanyam, Of Counsel
Pooja Patel, Of Counsel
Elizabeth Miller, General Counsel
20 Snyder Ave.
Brooklyn, NY 11226
Phone: (718) 940-6311
matthew.schedler@camba.org

LAW OFFICE OF AHMAD KESHAVARZ
Ahmad Keshavarz, Esq.
16 Court St., #2600
Brooklyn, NY 11241
Phone: (718) 522-7900
ahmad@NewYorkConsumerAttorney.com

_Attorneys for Plaintiff_