# EXHIBIT A

643 F.Supp.3d 421
United States District Court, S.D. New York.

CURRY MANAGEMENT CORP.
and Curry Corporation, Plaintiffs,
v.
JPMORGAN CHASE BANK, N.A., Defendant.

No. 22-CV-05006-CM
|
Signed November 30, 2022

**Synopsis**
**Background:** Payee on checks that third-party administrator of payee's employee medical plan deposited into its own account at bank, rather than sending them to payee, and company that was associated with payee brought action in state court against bank, asserting claims for conversion under Article 3 of the Uniform Commercial Code (UCC), money had and received, unjust enrichment, negligence, and common law conversion. Following removal, bank filed motion to dismiss for failure to state claim.

**Holdings:** The District Court, Colleen McMahon, J., held that:

company associated with payee lacked standing to assert claims related to checks;

payee sufficiently alleged constructive possession of checks, as required for UCC conversion claim;

restrictive endorsements did not give rise to duty owed by bank to payee, precluding negligence claim;

allegations were insufficient to state claim for money had and received;

allegations were insufficient to state claim for unjust enrichment; and

payee could not proceed with common law conversion claim.

Motion granted in part and denied in part.

**Procedural Posture(s):** Motion to Dismiss for Failure to State a Claim.

**Attorneys and Law Firms**

**\*423** Michael Christopher Lamendola, Simmons Jannace Deluca, LLP, Hauppauge, NY, Steven D. Jannace, Simmons, Jannace, LLP, Syosset, NY, for Plaintiffs.

Ronald Mark Neumann, Zeichner Ellman & Krause LLP, New York, NY, for Defendant.

**MEMORANDUM DECISION AND ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

McMahon, United States District Judge:

Curry Management Corp. ("Management") and Curry Corporation ("Corporation") (together "Plaintiffs") filed this lawsuit on May 13, 2022, against JPMorgan Chase Bank, N.A. ("Defendant"), due to the alleged misconduct of Employee Benefit Solutions LLC ("EBS"). (Dkt. No. 1-1 ("Compl."), ¶5). Plaintiffs plead that, between September, 2018, and March, 2019, EBS fraudulently negotiated and deposited twenty-three checks that were made payable to the Curry Corporation into its own account with Defendant, misappropriating no less than $1,069,400.12 from Plaintiffs. (*Id.*, ¶6).

Plaintiffs plead that, by allowing EBS to deposit the fraudulently negotiated checks in EBS' bank account, Defendant violated § 3-419(1)(c) of the New York Uniform Commercial Code ("UCC") (Count I). (*Id.*, at 8). Plaintiffs also plead common law claims for money had and received (Count II); unjust enrichment (Count III); negligence **\*424** (Count IV); and conversion (Count V). (*Id.*, at 9-12).

Defendant filed a motion to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 11 ("MTD Br.")). Defendant argues that Plaintiffs' claims are fatally flawed since Plaintiffs never possessed the checks, Defendant did not benefit from the deposits, some of the claims are time barred, and Management lacks standing. (Dkt. No. 14). The motion is opposed. (Dkt. No. 16).

For the reasons that follow, Defendant's motion to dismiss the complaint is GRANTED in part, DENIED in part.

## BACKGROUND

**A. Parties**
Plaintiff Management is a New York corporation with its principal place of business in New York. (Compl., ¶2). Management is an automobile dealership management company. (*Id.*).

Plaintiff Corporation is a closely held New York corporation with its principal place of business in New York. (*Id.*, ¶3).

Defendant is a national bank conducting business in New York. (*Id.*, ¶4). Defendant's main office is located in Ohio, as set forth in its articles of association. (Dkt. No. 1, ¶5). "For diversity jurisdiction purposes ... Congress has discretely provided that national banks 'shall ... be deemed citizens of the States in which they are respectively located.' ... we hold that a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306-07, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006). Defendant is therefore a citizen of Ohio for the purpose of diversity of citizenship.

**B. Plaintiffs' Relationship With EBS**
Plaintiffs maintained, and continue to maintain, a self-funded employee medical plan (the "Plan"), in order to provide medical insurance to some of its employees. (Compl., ¶8). EBS and Plaintiffs entered into a written agreement that EBS would serve as the Plan's third-party administrator ("TPA"). (*Id.*, ¶¶9-10); (Dkt. No. 12-2). The written agreement constituted "the entire Contract between the parties." (*Id.*, at 5).

As part of the agreement between Plaintiffs and EBS, EBS was authorized to, among other things, "Manage the checking account(s) established in the name of the Benefit Plan, prepare checks for payment of approved claims and forward checks to the Employer, employee, or any eligible health care provider ..." (*Id.*, at 2). EBS was not authorized to endorse, cash, negotiate, or deposit any checks made payable to Plaintiffs. (Compl., ¶12).

**C. EBS' Use of Checks Made Payable to Plaintiffs**
Partners Managing General Underwriters ("Partners") issued a stop-loss insurance policy to Plaintiffs for the calendar year 2018. (*Id.*, ¶16). In connection with that policy, Partners issued twenty-three checks made out to Curry Corporation between September 2018 and March 2019, as reimbursement for medical claims submitted by Plaintiffs' employees. (*Id.*, ¶17). Partners sent these checks to EBS. (*Id.*, ¶18). Curry pleads that it was the normal course of business for Partners to send the checks to EBS as Curry's TPA. (*Id.*). After receiving the checks, EBS was supposed to immediately send the checks to Curry. (*Id.*).

EBS allegedly endorsed the checks as "For Deposit Only" and then deposited them into its own account at Chase. (*Id.*, ¶¶19-21). Although the checks were payable **\*425** only to Curry Corporation, Defendant processed the checks and the money ended up in EBS' account. (*Id.*, ¶22). Defendant allegedly did this without any inquiry, concern, or due diligence. (*Id.*, ¶23). Curry does not allege that it had any prior contractual relationship with Defendant, nor any account at Chase.

Curry does not plead how it discovered EBS' actions or whether Partners was forced to issue new checks to reimburse Curry for the medical claims. Nonetheless, Partners obviously learned about EBS' actions, because it submitted a fraud claim to Defendant, asking that the proceeds of the checks be returned. (*Id.*, ¶25). Defendant denied Partners' request and refused subsequent requests to reopen its fraud investigation. (*Id.*, ¶¶26-27). Plaintiffs made additional requests that Defendant reopen the fraud investigation and return the proceeds, which Defendant allegedly ignored. (*Id.*, ¶28).

**D. Procedural Posture**
Plaintiffs filed this lawsuit against the Bank on May 13, 2022. (*Id.*, at 14). Plaintiffs pleaded claims for violations of the New York UCC, as well as several common law claims. (Compl.). The complaint was initially filed in the Supreme Court of the State of New York in New York County, but was removed to this Court in accordance with 28 U.S.C. § 1446(a). (Dkt. No. 1).

Defendant has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 11). Defendant argues that Plaintiffs' UCC claim fails because Plaintiff never possessed the checks, (MTD Br., at 4), and the common law claims are simply an impermissible attempt to circumvent the UCC. Defendant also argues that each common law claim is insufficiently pleaded. (*Id.*, at 10-16). Defendant also contends that Management lacks standing because it was not the payee of the checks. (*Id.*, at 16-18).

Finally, Defendant contends that the UCC and conversion claims for some of the checks are time barred. (*Id.*).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion to dismiss, the Court is required to accept all material facts alleged in a complaint as true, and to draw all reasonable inferences from its allegations in the plaintiff's favor. *Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 386-87 (S.D.N.Y. 2006). The court is, however, limited to the facts stated in the complaint or in documents attached to the complaint. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). "To survive a motion to dismiss under Rule 12(b)(6) ... a complaint must contain sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face." *Mabry v. Neighborhood Def. Serv.*, 769 F. Supp.2d 381, 389 (S.D.N.Y. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 at 678.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 664, 129 S.Ct. 1937. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677-78, 129 S.Ct. 1937 (quoting **\*426** *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Unless the well-pleaded allegations have "nudged [plaintiff's] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

## DISCUSSION

**I. The Motion to Dismiss Management's Claims is Granted Due to Lack of Standing.**

"To satisfy constitutional standing requirements, a plaintiff must prove: (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015).

Management lacks standing to pursue a claim against the Bank, as it was not the payee on the checks. Plaintiffs' fraud report submitted to Defendant stated that the checks were payable to Curry Corporation, not to Curry Management. (Dkt. No. 13-1, at 5), Since Management was not the payee, it lacks interest in the checks and their proceeds, and therefore has no injury upon which to sue. *See State v. Barclays Bank of N.Y., N.A.*, 76 N.Y.2d 533, 561 N.Y.S.2d 697, 563 N.E.2d 11, 15 (1990) ("The checks were never actually or constructively delivered to plaintiff. It, therefore, never acquired a property interest in them and cannot be said to have suffered a loss.").

Seemingly in recognition of this shortcoming, Plaintiffs did not attempt to refute Defendant's argument that Management lacks standing. (Dkt. No. 14; Dkt. No. 22, at 6). A party may be deemed to concede an argument by failing to address it in an opposition brief. *AT & T Corp. v. Syniverse Tech., Inc.*, No. 12 Civ. 1812 (NRB), 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014). All claims alleged by Management are therefore dismissed in their entirety.

**II. The Motion to Dismiss Corporation's New York UCC Claim Is Denied.**

Section 3-419(1)(c) of the N.Y. UCC states that "An instrument is converted when ... it is paid on a forged indorsement." Section 3-419(1) imposes liability for conversion for banks that pay a check over a forged endorsement. *Lesser v. TD Bank, N.A.*, 463 F. Supp. 3d 438, 451-52 (S.D.N.Y. 2020).

Defendant argues that Corporation's UCC claim fails because Corporation never had actual or constructive possession of the checks, and so lacked any interest in them. (MTD Br., at 5); *Barclays Bank of N.Y.*, 561 N.Y.S.2d at 698, 563 N.E.2d 11. This argument fails at the motion to dismiss stage because the allegations, read most favorably to Corporation, support the claim of constructive possession by Curry.

A court may find constructive possession when the checks are physically delivered to an agent of the payee. *Lesser*, 463 F. Supp. 3d at 450. The contract between EBS and Curry authorized EBS to "Manage the checking account(s) established in the name of the Benefit Plan, prepare checks for payment of approved claims and forward checks to the Employer, employee, or any eligible health care provider ..." (Dkt. No. 12-2, at 2). Corporation argues that EBS was acting as its agent when it received the checks from Partners, which EBS was authorized to forward to Curry. (Dkt. No. 16, at 3-8). This, Corporation urges, makes out constructive possession.

Defendant argues that the language of the contract only authorized EBS to forward **\*427** checks that EBS had prepared from an account that it was managing for Plaintiffs' Plan. (Dkt. No. 22, at 2). Put otherwise, Defendant argues that EBS was acting outside of its contractual authority, meaning it was not acting as Plaintiffs' agent when it failed to forward the checks it received from partners—which, in turn, means that Corporation never had constructive possession of the checks.

At this stage, all reasonable inferences are drawn in Corporation's favor. The complaint pleads that "As was the normal course of business between Curry and EBS, and in accordance with Curry and EBS' agreement, Partners sent the Checks to EBS as Curry's TPA." (Compl., ¶18). If that allegation is true, then EBS took possession of checks on Curry's behalf, which establishes constructive possession; the fact (if it be so) that EBS later exceeded its authority by depositing the checks is not relevant, and neither is Defendant's focus on the word "forward."

But assuming arguendo that there is something to Defendant's argument, the contract between Plaintiffs and EBS authorized EBS to "Manage the checking account(s) established in the name of the Benefit Plan, prepare checks for payment of approved claims and *forward* checks to the Employer, employee, or any eligible health care provider ..." (Dkt. No. 12-2, at 2 (emphasis added)). The language of the contract is at least ambiguous as to whether EBS had authority only to forward the checks it prepared, or whether the authority to forward extended to all checks received as part of its "management" of the checking account. The word *forward* certainly suggests that EBS would be sending Plaintiffs checks received from others. In the face of any ambiguity as to whether EBS was acting as Plaintiffs' agent when it possessed the checks, the motion to dismiss must be denied. See *Bank of Am. Nat. Tr. & Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir. 1985) ("Where contract language is ambiguous, the differing interpretations of the contract present a triable issue of fact.").

Finally, Defendant argues that it is implausible that Plaintiffs would employ EBS to receive and re-route checks, because that would delay Curry's receipt of deposit. (MTD Br., at 6). I disagree. EBS' role was to administer the Plan. (Dkt. No. 12-2). Beyond giving EBS some authority to handle and forward checks, as described above, EBS managed expense reports, invoices, and payment of premiums. (*Id.*, at 6-7). It is perfectly plausible that Plaintiffs would have EBS receive checks related to the Plan so that EBS could keep proper records and ensure that payments are accounted for.

The fact that EBS allegedly took physical possession of the checks makes this case different from the cases Defendant cites, wherein the plaintiff never actually or constructively possessed the checks *at any point. See, e.g.*, *Barclays Bank of N.Y.*, 561 N.Y.S.2d at 698, 563 N.E.2d 11; *Wright v. Bank of Am.*, 26 Misc.3d 1203A, 906 N.Y.S.2d 784 (Table), 2009 WL 5174196, at \*1 (N.Y. Sup. Ct. 2009) ("There is no claim that either plaintiff, his mother or anyone acting on their behalf ever obtained possession, be it actual or constructive of the Check or any control thereof."). In *Barclays*, an accountant prepared tax returns for clients, who issued checks payable to the State. 561 N.Y.S.2d at 698, 563 N.E.2d 11. The clients gave the checks to the accountant, who forged indorsements on the checks and deposited them in his own account with the defendant Bank. *Id.* The State filed suit against the Bank to recover the aggregate amount of the checks, but the case was dismissed since the State never actually or constructively possessed the checks at any point. **\*428** *Id.*, at 698-700, 563 N.E.2d 11. In *Wright*, the plaintiff sold his real property to an individual who had obtained financing from a lender. 906 N.Y.S.2d 784, 2009 WL 5174196 at \*1. The buyer issued a check to the lender's attorney for exchange at closing. *Id.* Instead of being delivered to plaintiff, the check was fraudulently endorsed and collected at defendant Bank. *Id.* The case was dismissed since plaintiff never had actual or constructive possession of the check. *Id.* at \*3.

If EBS acted as Corporation's agent in possessing the checks, that does not render the pleaded conversion "authorized" as

Defendant argues. (MTD Br., at 6). As Defendant points out, an agent is not an agent for all purposes. (*Id.*). EBS may have been authorized to receive a check on behalf of Corporation, thus establishing constructive possession for the purposes of § 3-419, while not being authorized to deposit the checks into its own account.

Since it is plausible that EBS was acting as Plaintiffs' agent in possessing the check, thus giving Corporation constructive possession of the checks, the motion to dismiss is denied. *See Lesser*, 463 F. Supp. 3d at 450.

### III. The Motion to Dismiss Corporation's Common Law Claims is Granted.

Defendant makes a broad argument that all of the common law counts must be dismissed as impermissible attempts to circumvent the UCC. (MTD Br., at 10).

In New York, " 'principles of common law and equity may supplement provisions of the Uniform Commercial Code, they may not be used to supplant its provisions, or the purposes and policies those provisions reflect .... As applied to § 3-419, this principle prevents a plaintiff from sidestepping the U.C.C. by restating a *failed* § 3-419 claim as a claim for common-law conversion." *Lesser*, 463 F. Supp. 3d at 453 (emphasis added). However, as was the case in *Lesser*, there is no basis to dismiss a well-pleaded common law claim simply because a claim under § 3-419 is adequately stated. *Id.* ("TD does not cite any authority, and the Court is unaware of any, suggesting that a common-law conversion claim should be dismissed where, as here, plaintiff has adequately stated a claim under § 3-419."). However, viewed on a claim by claim basis, Corporation's common law claims must be dismissed, since none is a well-pleaded claim.

#### A. Corporation's Negligence Claim Fails Since Defendant Did Not Owe It a Duty.

To state a negligence claim under New York law, Corporation must show that "(1) a duty owed by the defendant to plaintiffs; (2) breach of that duty; and (3) injuries proximately caused by the breach." *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 178 (S.D.N.Y. 2012).

Corporation's complaint is fatally flawed since it does not plead facts demonstrating any establish duty owed by Defendant.

In general, "The typical banking relationship does not involve any duty that could support a tort-based negligence claim." *Zaidi v. JPMorgan Chase Bank, N.A.*, No. 2:19-cv-1080 (DRH) (ARL), 2021 WL 848864, at *7 (E.D.N.Y. Mar. 5, 2021). The complaint does not indicate that Corporation even had a "typical banking relationship" with Defendant, since Corporation does not plead that it had any prior contractual relationship or bank account with Defendant.

Curry argues that New York law imposes a duty on banks that receive a check bearing a restrictive endorsement. Section 3-206(3) of the N.Y. UCC states that "Except for an intermediary bank, any transferee **\*429** under an indorsement which is conditional or includes the words 'for collection', 'for deposit', 'pay any bank', or like terms ... *must* pay or apply any value given by him for or on the security of the instrument *consistently with the indorsement* ..." (emphasis added). "A restrictive indorsement ... imposes a new and separate duty upon a transferee to pay the check only in accord with the restriction. In this case, the restrictive indorsements required that the checks be deposited only in the accounts of the respective restrictive indorsers, the named payees. This was not done and the failure to do so serves as a basis for liability ..." *Underpinning & Found. Constructors, Inc. v. Chase Manhattan Bank, N.A.*, 46 N.Y.2d 459, 414 N.Y.S.2d 298, 303, 386 N.E.2d 1319 (1979). Curry argues that *Underpinning* establishes that Chase had a duty to investigate the check as required by the UCC.

However, neither *Underpinning* nor any other case establishes a duty that would support a simple negligence claim based on the facts pleaded in this case. While the UCC does require banks to honor a restrictive endorsement, courts have only applied that requirement to give rise to a cause of action by a *drawer* of a check, not a payee, which is what Curry was. In *Underpinning*, the plaintiff was the drawer of the check, and that was true in all other lawsuits this Court has located. *See, e.g., Millens v. Kingston Tr. Co.*, 118 Misc.2d 512, 461 N.Y.S.2d 938 (N.Y. Sup. Ct. 1983); *Avila v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 826 F. Supp. 92 (S.D.N.Y. 1993); *Roberts v. Wachovia Bank, N.A.*, No. 09 Civ. 1968 (PAC), 2010 WL 3629591 (S.D.N.Y. Sept. 16, 2010). Curry does not cite to, nor is the Court aware of, any case where the reasoning in *Underpinning* was used to establish any duty to the *payee* of a check, so as to support

a simple negligence claim against a depository bank. (Dkt. No. 16, at 10-11). Moreover, Underpinning itself does not hold that a plaintiff drawer could sue in simple negligence; it holds, rather, that there might be a claim on a theory of money had and received or conversion. 414 N.Y.S.2d at 300, 386 N.E.2d 1319; *see infra* page 430.

Curry's reliance on *Soma v. Handrulis* is also misplaced. 277 N.Y. 223, 14 N.E.2d 46 (1938). *Soma* was a pre-UCC case that dealt with the standard for assessing bad faith in a conversion claim; it did not discuss the issue of a duty sufficient to support a negligence claim. *Id.* at 233-34, 14 N.E.2d 46.

In the absence of an established duty running from Chase to Curry, Corporation's negligence claim fails.

### B. Corporation's Money Had and Received Claim Fails Since Defendant Did Not Benefit from the Transaction.

To state a case for money had and received, Corporation must show that " '(1) the defendant received money belonging to the plaintiff, (2) the defendant benefitted from receipt of the money, and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money.' " *Lebovits v. Bassman*, 120 A.D.3d 1198, 1199, 992 N.Y.S.2d 316 (N.Y. App. Div. 2014) (quoting *Goel v. Ramachandran*, 111 A.D.3d 783, 975 N.Y.S.2d 428, 436 (2013)).

Corporation pleaded that the bank received money belonging to Corporation when it deposited the checks. *See Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 643 (E.D.N.Y. 2000) ("A necessary incident of the debtor-creditor relationship between the creditor-depositor and the debtor-bank is that any funds deposited by the creditor-depositor into an account with the debtor-bank become the bank's property. The bank at the same time becomes contractually indebted to the **\*430** depositor in the amount of the funds deposited.").

Corporation's pleading is flawed, however, in that it does not plead facts suggesting that Defendant benefitted from the transaction. Corporation merely pleaded that "By depositing the Checks, Chase received and benefitted from money belonging to Curry." (Compl., ¶40). This conclusory assertion is insufficient. *See Iqbal*, 556 U.S. at 664, 129 S.Ct. 1937. The complaint fails to plead anything to suggest that, by receiving the funds from the checks while simultaneously being indebted to EBS for the same amount, Defendant received any benefit. *See OneWest Bank, FSB v. Deutsche Bank Nat'l Trust Co.*, 186 A.D.3d 92, 127 N.Y.S.3d 97, 104-05 (2020) ("pursuant to R & L's request to purchase an official check in the amount of $292,000, Signature wired $292,000 to IPS and debited R & L's account in the same amount. Signature neither retained the money nor used the money for its own benefit.... Signature is entitled to summary judgment dismissing the claim for money had and received.").

Since EBS, not Defendant, received a benefit from the transaction, the claim is dismissed. This Court declines to extent the reasoning of *Underpinning*, *supra* pages 428-29, to establish a claim in favor of the drawee (not drawer) of a check on a money had and received theory.

### C. Corporation's Unjust Enrichment Claim Fails Since Defendant Did Not Benefit from the Transaction.

To plead a claim for unjust enrichment in New York, Corporation must show "that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306.

As explained above, Corporation's claim fails since the facts pleaded in the complaint do not support an inference that Defendant was enriched by the transaction. Corporation merely pleaded that "Chase benefitted from the deposit of the Checks at Curry's expense." (Compl, ¶48). For the same reasons stated above, that is insufficient to plead unjust enrichment. *See, e.g.*, *Pinecover v. J.P. Morgan Chase Bank, N.A.*, 592 F.Supp.3d 212, 229 (S.D.N.Y. 2022) ("The FAC, however, does not allege that either KeyBank or Wells Fargo benefitted from the deposit of the stolen funds into customer accounts at those banks. Funds held in the account of a bank's customer do not represent a benefit to a bank. Instead, they result in the bank's incurring a debt to the account holder.").

### D. Corporation's Conversion Claim is Fundamentally Flawed So Must Be Dismissed.

To establish a claim for conversion under New York law, Corporation must show that " '(1) the property subject to

conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.' " *Benex LC v. First Data Merck Serv. Corp.*, No. 14-CV-6393 (JS) (AKT), 2016 WL 1069657, at *5 (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 540 (S.D.N.Y. 2004)).

It is settled law that a plaintiff may not maintain a common law conversion claim against a bank for funds deposited in a bank account, since those funds are not sufficiently specific and identifiable in relation to the bank's other funds. *See* **\*431** *Fundacion Museo de Arte Contemporaneo de Caracas v. CBI-TDB Union Bancaire Privee*, 160 F.3d 146, 148 (2d Cir. 1998); *Chem. Bank v. Ettinger*, 196 A.D.2d 711, 602 N.Y.S.2d 332, 335-36 (1993). The UCC is intended to provide a cause of action here where the common law cannot—and it does in this case, since the Court has declined to dismiss Plaintiff's claim under UCC § 3-419. Therefore, the purely duplicative and legally defective conversion claim must be dismissed.

**IV. Corporation's New York UCC Claim Is Time Barred for Checks Deposited Before September 27, 2018.**

Conversion claims under N.Y. UCC § 3-419 have a three-year statute of limitations. N.Y. C.P.L.R. § 214(2). The statute of limitations for a conversion claim begins to run on the date the conversion took place. *Lawyers' Fund for Client Prot. of the State of N.Y. v. Gateway State Bank*, 239 A.D.2d 826, 658 N.Y.S.2d 705 (1997).

On March 20, 2020, Governor Cuomo's Executive Order No. 202.8 tolled the applicable statute of limitations until November 3, 2020, a total of two hundred twenty-eight days.

Plaintiffs filed this lawsuit on May 13, 2022, rendering any checks deposited before September 27, 2018, which is three years and two-hundred twenty-eight days before the complaint was filed, time barred. (Compl.); (MTD Br., at 19).

Corporation did not contest that UCC claims on checks deposited before September 27, 2018 are time barred, instead claiming that its common law money had and received and unjust enrichment claims allow recovery on all of the checks. (Dkt. No. 16). However, since those claims have been dismissed, any claim stemming from checks that were deposited before September 27, 2018 is dismissed as well.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part, DENIED in part. Corporation's UCC claim for checks deposited after September 27, 2018 survives.

This constitutes the decision and order of the court. This is a written decision.

**All Citations**

643 F.Supp.3d 421, 109 UCC Rep.Serv.2d 526

---

2010 WL 1223584
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Curtis J. YARBOROUGH, Plaintiff,
v.
QUEENS AUTO MALL, INC., M & T Bank, Wynn's Extended Care, Inc., Star Auto Funding, Inc., Defendants.

No. 08–CV–3179 (DLI)(ALC).
|
March 23, 2010.

### MEMORANDUM AND ORDER

DORA L. IRIZARRY, District Judge.

**\*1** Plaintiff Curtis Yarborough brought suit in this "lemon law" case against defendants Queens Auto Mall ("QAM"), Star Auto Funding, Inc. ("Star Auto"), Wynn's Extended Care, Inc. ("Wynn's"), and M & T Bank ("M & T") asserting three federal and eleven state law causes of action.[1] M & T moved to dismiss plaintiff's claims arising under the Magnuson–Moss Warranty Act (claim 3), Truth in Lending Act (claim 8), and Racketeer Influenced and Corrupt Organization Act (claim 14). In his Affirmation in Opposition to M & T's Motion to Dismiss, plaintiff moved to withdraw claims 3 and 14, and sought leave to amend his complaint to assert three new causes of action, including a federal claim arising under the Fair Credit Reporting Act. (Pl.'s Aff. in Opp'n ¶¶ 6, 12.) Plaintiff also cross-moved to dismiss M & T's counterclaim for breach of contract. (Pl.'s Answer to Countercl. 3.) For the reasons set forth below, claims 3, 8, and 14 are dismissed with prejudice, plaintiff is denied leave to amend, and his motion to dismiss defendant's counterclaim is denied. The remaining claims, all of which arise under state law, are dismissed without prejudice as the court declines to exercise supplemental jurisdiction.

### I. Background

On June 25, 2007, plaintiff purchased a car from QAM and signed two contracts—a service contract with Wynn's for a two year/24,000 mile warranty, and a retail installment contract with QAM which was later assigned to M & T. (Def's. Affirm. in Opp'n Ex. B(b).) Plaintiff alleges that, before the purchase, defendants assured him that the car was in "perfect" condition, was covered by a "thirty-day/sixty-day warranty," and they would repair the car pursuant to the warranty without charge. (Compl.¶ 9.) However, immediately after taking possession of the car, it allegedly malfunctioned. Plaintiff claims that he brought the car back to QAM approximately three other times within the warranty period, and that, each time, QAM refused to repair the car or return his down payment and installment payments. (*Id.* ¶¶ 3, 11.) The car allegedly stopped running altogether on August 22, 2007, at which point plaintiff returned the car to QAM, and claims to have properly revoked the contract. (*Id.* ¶ 11.) As a consequence of the foregoing, plaintiff initiated this action on August 5, 2008.

### II. Discussion

#### A. Legal Standard

In deciding a motion for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c), the court accepts all allegations as true and draws all inferences in favor of the plaintiff. *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). Dismissal is warranted if the factual allegations are insufficient to "raise a right to relief above the speculative level." *Price v. N.Y. State Bd. of Elections,* 540 F.3d 101, 107 (2d Cir.2008).

#### B. Statute of Limitations under the Federal Truth in Lending Act (Claim 8)

Plaintiff's eighth cause of action involves purported violations of the Truth in Lending Act ("TILA")[2] for M & T's alleged mischaracterization of, and failure to provide, several material disclosures before the parties entered into the car transaction. Specifically, plaintiff alleges that M & T: (1) inaccurately disclosed the annual percentage rate, amount financed, and finance charge under the transaction; (2) should have marked certain disclosures during the negotiation process as estimates; and (3) should have delivered "disclosures to Plaintiffs [sic] in a form that they [sic] could keep prior to the consummation of the transaction." (Compl.¶¶ 80–85.)

**\*2** TILA actions are subject to a one-year statute of limitations from the date of the occurrence of the violation. 15 U.S.C. § 1640(e) (2010). In a closed-end credit transaction, such as an automobile installment contract, the "occurrence of the violation" is "the date on which a plaintiff enters into a loan agreement." *Cardiello v. The Money Store,*

*Inc.,* 2001 WL 604007, at *3 (S.D.N.Y. June 1, 2001). Plaintiff entered into the loan agreement for his automobile under a retail installment contract on June 25, 2007, and filed suit more than one year later on August 5, 2008. Therefore, pursuant to the plain language of the statute, his claim is time barred. [3]

Recognizing this reality, plaintiff now claims "rescission damages" pursuant to 15 U.S.C. 1635(a)[4] for M & T's purported failure to rescind the transaction upon plaintiff's notice. (Pl's. Mem. in Opp'n 3.) Plaintiff asserts that the one-year statute of limitations for TILA "disclosure" violations is somehow "irrelevant to a suit that is also seeking Rescission Letter Damages," and that, in such cases, the one-year limitations period "begins to run on the 21 st day after the lender received the borrower's rescission notice—not from the consummation date." (*Id.*)

There is no mention of § 1635 or a claim for "rescission damages" in plaintiff's complaint. Rather, plaintiff raised his § 1635 claim for the first time in his Memorandum of Law in Opposition to the Motion to Dismiss. Plaintiff may not amend his complaint through his motion papers. *See Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998) (rejecting new claim raised for first time in plaintiff's opposition to a motion to dismiss). This is a transparent attempt by plaintiff to morph his TILA claim for disclosure damages into a claim for rescission damages because of the one-year statute of limitations. Accordingly, this court will not consider plaintiff's claim under § 1635.

However, even if the court considered the § 1635 claim, it would fail because the right of rescission only applies to transactions in which the creditor acquires a security interest in the borrower's principal dwelling. Section 1635(a) provides:

> "[I]n the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the *principal dwelling* of the person to whom credit is extended, the obligor shall have the right to rescind the transaction...." 15 U.S.C. § 1635(a) (emphasis added); *see also* 12 C.F.R. 226.23(a) (same limitation to principal dwelling); *Beach,* 523 U.S. at 411. Accordingly, plaintiff has no right of rescission under § 1635.

### C. Plaintiff's Other Federal Claims (Claims 3 & 14)

Plaintiff also has asserted a Magnuson–Moss Warranty Act claim (claim 3) and a Racketeer Influenced Corruption Act Claim (claim 14) in his complaint. (Compl.¶ ¶ 53–56, 109–18.) In his Affirmation in Opposition to M & T's Motion to Dismiss, plaintiff moved to voluntarily dismiss these claims. (Pl.'s Aff. in Opp'n. ¶¶ 6, 12 .) In addition, plaintiff considers claim 3 moot since he has settled with the warranty company (Wynn's). (*Id.* ¶ 8.) Based on plaintiff's Affirmation, the court hereby dismisses these two claims with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

### D. Plaintiff's Request to Amend the Complaint

*3 Plaintiff seeks leave in his Affirmation to file an amended complaint which would include claims pursuant to the Fair Credit Reporting Act (15 U.S.C. § 1681 *et seq.*), and state law claims for conversion and the "Motor Vehicle Finance Sales Act and/or Motor Vehicle Retail Installment Sales Act." (Pl.'s Aff. in Opp'n ¶¶ 6, 12.)

Rule 7(b) of the Federal Rules of Civil Procedure requires that motions "state with particularity the grounds for seeking the order, and state the relief sought." FED. R. CIV. P. 7(b). Motions to amend a complaint must explain the basis for, and nature of, the proposed amendment, and should include a complete copy of the proposed amended complaint so that both the court and opposing parties can understand the exact changes sought. *See* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1485 (2d ed.2009). Plaintiff failed to file a formal motion to amend, a memorandum of law in support of amendment, or even the proposed amended complaint for the court's review. As such, the court is unaware of the exact nature of the proposed amendments, providing the court with sufficient reason to deny leave to amend. Moreover, all the federal claims plaintiff has heretofore raised have been meritless, as illustrated by the dismissal of the TILA claim and plaintiff's voluntary withdrawal of claims 3 and 14. No federal claims remain in this action, and the court therefore lacks subject-matter jurisdiction over this matter as it declines to exercise supplemental jurisdiction over the remaining claims arising under state law. Under these circumstances, the court denies leave for plaintiff to amend his complaint for what appears to be the sole purpose of keeping the case in federal court.

### E. Plaintiff's Motion to Dismiss M & T's Counterclaim

On March 28, 2008, plaintiff moved to dismiss M & T's breach of contract counterclaim.[5] Because no federal claims remain in this case, this motion is denied without prejudice to renew in state court.

### III. Conclusion

For the foregoing reasons, claims 3, 8, and 14 are dismissed with prejudice, plaintiff is denied leave to amend, and his motion to dismiss defendant's counterclaim is denied. The remaining claims, all of which arise under state law, are dismissed without prejudice.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1223584

---

### Footnotes

1   Plaintiff has since settled with all defendants except M & T.

2   The primary purpose of the TILA is to help consumers avoid "the uninformed use of credit" by assuring meaningful disclosure of credit terms. 15 U.S.C. § 1601 (2010). In furthering this purpose, TILA and its implementing Regulation Z require creditors to disclose certain material terms clearly and concisely in a written document which consumers may retain. *Cardiello v. The Money Store, Inc.,* 2001 WL 604007, at *3 (S.D.N.Y. June 1, 2001). 15 U.S.C. § 1640 creates a private right of action for violations of TILA. *Id.*

3   Because plaintiff has not asserted that the doctrine of equitable tolling applies, the court declines to examine its application here.

4   The right of rescission pursuant to § 1635(a) allows a borrower to rescind a loan agreement if the lender fails "to deliver certain forms or to disclose important terms accurately." See *Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 411, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998).

5   The court deemed plaintiff's letter of March 28, 2009 as a cross-motion to dismiss defendant's counterclaim. (Electronic Order dated Mar. 31, 2009.)

---