At a Special Term of the Supreme Court, held in and for the County of Erie at the Erie County Courthouse, in the City of Buffalo, New York, on the 21 day of July 2009.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE
-------------------------------------------------------------------X

In the Matter of the petition of HONORABLE ANN PFAU, Chief Administrative Judge of the New York State Unified Court System,

Petitioner,

Index No. I2009-8236

-against-

FORSTER & GARBUS; SHARINN & LIPSHIE, P.C.; KIRSCHENBAUN & PHILLIPS, P.C.; SOLOMON AND SOLOMON, P.C.; GOLDMAN & WARSHAW, P.C.; ELTMAN ELTMAN & COOPER; ERIC M. BERMAN, P.C.; STEPHEN EINSTEIN & ASSOCIATES, P.C.; FABIANO & ASSOCIATES, P.C.; JONES, JONES, LARKIN & O'CONNELL, LLP; PANTERIS & PANTERIS, LLP; ZWICKER & ASSOCIATES P.C.; RELIN, GOLDSTEIN & CRANE LLP; WOODS OVIATT GILMAN LLP; LESCHACK & GRODENSKY, P.C.; HAYT, HAYT & LANDAU LLP; PRESSLER and PRESSLER, LLP; JAFFE & ASHER LLP; MULLEN & IANNARONE, P.C.; ARNOLD A. ARPINO & ASSOCIATES PC; HOUSLANGER & ASSOCIATES, PLLC; MANN BRACKEN, LLP; SMITH, CARROAD, LEVY & FINKEL; MCNAMEE, LOCHNER, TITUS & WILLIAMS, P.C.; THOMAS LAW OFFICES, PLLC; FLECK, FLECK & FLECK; WOLPOFF & ABRAMSON, LLP; ERIC W. OSTRAGER; COHEN & SLAMOWITZ, LLP ; CULLEN and DYKMAN LLP; WINSTON and WINSTON, P.C.; COOPER ERVING & SAVAGE LLP; ROBERT P. ROTHMAN, PC; GERALD D. DE SANTIS; GREATER NIAGARA HOLDINGS, LLC; RODNEY A. GIOVE; ADVANCED LITIGATION SERVICES, LLC; and JASON J. CAFARELLA;

**ORDER TO SHOW CAUSE**

Respondents.
-------------------------------------------------------------------X

Upon reading and filing the annexed verified petition of the Honorable Ann Pfau, Chief Administrative Judge of the New York State Unified Court System, verified on July 9, 2009, and the affirmation of James M. Morrissey, Assistant Attorney General of the New York State Attorney General ("OAG"), affirmed to on July 17, 2009; the affidavits of Aric Andrejko,

JMM
216-NF-OH

Associate Internal Auditor for the Internal Audit Unit of the New York State Unified Court System ("UCS"), sworn to on July 6, 2009; Bradely J. Bartram, Intelligence Analyst with the Investigations Division of the OAG, sworn to on June 30, 2009; George Danyluk, Audit Manager for the Internal Audit Unit of the UCS, sworn to on July 15, 2009; Brian Jasinski, Internal Auditor for the Internal Audit Unit of the UCS, sworn to on July 6 , 2009; Sylvia Mahoney, Senior Court Office Assistant with the Buffalo City Court, sworn to on June 30, 2009; Sandra J. Migja, Investigator with the OAG, sworn to on June 29, 2009; OAG Investigator Kathleen Coppersmith, sworn to on June 24, 2009; OAG Investigator Ralph Dorismond, sworn to on June 24, 2009; OAG Senior Investigator Brian Ford, sworn to on June 24, 2009; OAG Investigator Jeffrey D. Haber, sworn to on June 24, 2009; OAG Investigator Andrea Hughes, sworn to on June 24, 2009; OAG Investigator Cynthia Kane, sworn to on June 23, 2009; OAG Investigator Joseph T. Kelly, sworn to on June 24, 2009; OAG Senior Investigator Judith L. Koerber, sworn to on June 25, 2009; OAG Investigator William L. Lightbody, sworn to on June 24 and July 8, 2009; OAG Investigator Douglas Lindamen, sworn to on June 24, 2009; OAG Investigator Frank Lingeza, sworn to on June 24, 2009; OAG Investigator Gerald J. Matheson, sworn to on June 24, 2009; OAG Investigator Paul Matthews, sworn to on June 26, 2009; Investigator John G. Phillips, sworn to on June 24, 2009; OAG Senior Investigator Peter Schwindeller, sworn to on June 24, 2009; OAG Investigator Chad A. Shelmidine, sworn to on June 25, 2009; OAG Senior Investigator Salvatore J. Ventola, sworn to on June 30, 2009; OAG Investigator Jon K. Wescott, sworn to on June 25, 2009, and the exhibits thereto, and upon the motion of ANDREW M. CUOMO, Attorney General of the State of New York, attorney for the petitioner, it is

ORDERED that the respondents in the above-entitled action show cause before Part 8 of this Court, at a Special Term thereof, to be held at the Erie County Courthouse, 25 Delaware Avenue, Buffalo, New York on the 25 day of August/September, 2009, at ~~9:30~~ 2:00 pm

o'clock in the forenoon of that day, or as soon thereafter as counsel may be heard, why an order should not be made pursuant to CPLR § 5015(c) and (d):

1. Ordering respondents to identify those actions and proceedings commenced in the judicial districts of New York State (i) in which they appeared, as a party and/or counsel, and (ii) for which American Legal Process, served the summons and complaint, or the notice of petition or order to show cause and petition, and (iii) for which a default judgment was taken, or for which an application for a default judgment is pending (referred to herein as "identified actions and proceedings");

2. Ordering respondents to notify the parties to the identified actions and proceedings ("interested parties") by first class mail to the last known residence, or actual place of business, using the notice form annexed as Exhibit N to the motion papers, of the pendency of this special proceeding, and of their right to be heard;

3. Requiring that respondents file with the Court a schedule of interested parties to which they sent the notice, including (i) the date each notice was sent, (ii) the name and address to which the notice was sent, (iii) the amount of the default judgment, (iv) the amount paid by the judgment-debtor after the default judgment was entered, if any;

4. Providing interested parties with an opportunity to be heard herein;

5. Vacating and setting aside default judgments taken in the identified actions and proceedings upon such terms as may be just, or denying a pending motion for a default judgment, unless the party seeking to obtain or enforce a default judgment establishes at the hearing, without reference to an American Legal Process affidavit of service, that service was effected properly pursuant to CPLR Article 3;

6. With respect to those default judgments that are vacated and set aside, directing restitution in like manner and subject to the same conditions as where a judgment is reversed or modified on appeal;

7. Enjoining the respondents from seeking to obtain a default judgment against any individual defendant as to whom the respondent used American Legal Process to serve the summons and complaint, or the notice of petition or order to show cause and petition, until such time as the respondents can show evidence of service other than an affidavit of service provided by American Legal Process; and

8. For such other and further relief as the court deems just and proper; and it is further

ORDERED that the petitioner shall file with the Erie County Clerk and the Court an electronic copy of the exhibits, and a paper copy of Exhibits C-P, and shall serve upon the respondents herein an electronic copy of the exhibits; and it is further

ORDERED that the Erie County Clerk shall seal Exhibits A and B, electronic databases containing personally identifiable information of New York State residents, and may not show Exhibits A and B to anyone other than a party, or by Order of the Court, but that such exhibits shall be provided to the respondents; and it is further

ORDERED that Pursuant to C.P.L.R. § 403(b), answering papers, if any, are required to be served at least two days before the return date of this special proceeding. If, however, this order to show cause is served at least twelve days before the return date, answering papers, if any, are required to be served at least seven days before the return date.

SUFFICIENT CAUSE to me appearing therefore,

LET service of one copy of this order and supporting papers on respondents by delivery of the same to their actual places of business by July 31, 2009 be deemed due and sufficient service hereof.

**GRANTED**

JUL 21 2009

BY [signature]
CAROL M. WILLIAMS
COURT CLERK

[signature]
HON. TIMOTHY J. DRURY, J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE
---------------------------------------------------------------------X

In the Matter of the petition of HONORABLE ANN PFAU, Chief Administrative Judge of the New York State Unified Court System,

Petitioner,

Index No.

-against-

**VERIFIED PETITION**

FORSTER & GARBUS; SHARINN & LIPSHIE, P.C.; KIRSCHENBAUN & PHILLIPS, P.C.; SOLOMON AND SOLOMON, P.C.; GOLDMAN & WARSHAW, P.C.; ELTMAN ELTMAN & COOPER; ERIC M. BERMAN, P.C.; STEPHEN EINSTEIN & ASSOCIATES, P.C.; FABIANO & ASSOCIATES, P.C.; JONES, JONES, LARKIN & O'CONNELL, LLP; PANTERIS & PANTERIS, LLP; ZWICKER & ASSOCIATES P.C.; RELIN, GOLDSTEIN & CRANE LLP; WOODS OVIATT GILMAN LLP; LESCHACK & GRODENSKY, P.C.; HAYT, HAYT & LANDAU LLP; PRESSLER and PRESSLER, LLP; JAFFE & ASHER LLP; MULLEN & IANNARONE, P.C.; ARNOLD A. ARPINO & ASSOCIATES PC; HOUSLANGER & ASSOCIATES, PLLC; MANN BRACKEN, LLP; SMITH, CARROAD, LEVY & FINKEL; MCNAMEE, LOCHNER, TITUS & WILLIAMS, P.C.; THOMAS LAW OFFICE, PLLC; FLECK, FLECK & FLECK; WOLPOFF & ABRAMSON, LLP; ERIC W. OSTRAGER; COHEN & SLAMOWITZ, LLP ; CULLEN and DYKMAN LLP; WINSTON and WINSTON, P.C.; COOPER ERVING & SAVAGE LLP; ROBERT P. ROTHMAN, PC; GERALD D. DE SANTIS; GREATER NIAGARA HOLDINGS, LLC; RODNEY A. GIOVE; ADVANCED LITIGATION SERVICES, LLC; and JASON J. CAFARELLA;

Respondents.
---------------------------------------------------------------------X

Petitioner, the Honorable Ann Pfau, alleges upon information and belief:

## <u>JURISDICTION AND PARTIES</u>

1. This is a special proceeding to vacate default judgments in all of the judicial districts of New York State, upon such terms as may be just, and for restitution where the underlying summons and complaint, or notice of petition or order to show cause and petition, were served by ZMOD Process Corp. DBA as American Legal Process ("American

Legal Process"). For purposes of this action, serving a summons and complaint, or a notice of petition or an order to show cause and a petition, is referred to as serving process.

2. Petitioner brings this special proceeding pursuant to N.Y. Civil Practice Law and Rules (CPLR) § 5015(c) and (d).

3. CPLR § 5015(c) provides:

> An administrative judge, upon a showing that default judgments were obtained by fraud, misrepresentation, illegality, unconscionability, lack of due service, violations of law, or other illegalities or where such default judgments were obtained in cases in which those defendants would be uniformly entitled to interpose a defense predicated upon but not limited to the foregoing defenses, and where such default judgments have been obtained in a number deemed sufficient by him to justify such action as set forth herein, and upon appropriate notice to counsel for the respective parties, or to the parties themselves, may bring a proceeding to relieve a party or parties from them upon such terms as may be just. The disposition of any proceeding so instituted shall be determined by a judge other than the administrative judge.

4. CPLR § 5015(d) provides: "Where a judgment or order is set aside or vacated, the court may direct and enforce restitution in like manner and subject to the same conditions as where a judgment is reversed or modified on appeal."

5. Petitioner is the Chief Administrative Judge for the New York State Unified Court System, appointed by the Chief Judge of the Court of Appeals pursuant to Article 6, § 28(a) of the New York State Constitution and Judiciary Law § 210(3) to supervise on behalf of the Chief Judge the administration and operation of the Unified Court System. Article 6, § 28(b) and Judiciary Law § 210(3). Chief Administrative Judge Pfau possesses the authority to do all things necessary and convenient to carry out her functions, powers and duties, and both designates the administrative judges for any and all of the courts of the Unified Court System, and delegates to those administrative judges administrative functions, powers and duties possessed by her which she, in her sole discretion, deems appropriate.

6. Respondents, except as noted below, are law firms and lawyers who

used American Legal Process to serve process, and who obtained default judgments in New York State with respect to actions and proceedings for which American Legal Process served process.

7. Respondent Mann Bracken L.L.C. is the successor by merger to Wolpoff & Abramson L.L.P., and Eskanos & Adler P.C., and is named in its own capacity and as the successor by merger to Wolpoff & Abramson L.L.P., and Eskanos & Adler P.C.

8. Respondent Greater Niagara Holdings, LLC is engaged in the business of debt collection and used American Legal Process to serve process on its behalf, and obtained default judgments in New York State with respect to actions and proceedings for which American Legal Process served process.

9. Respondent Rodney A. Giove represents plaintiffs in debt collection actions and proceedings, including Greater Niagara Holdings, LLC, and used American Legal Process to serve process, and obtained default judgments in New York State with respect to actions and proceedings for which American Legal Process served process.

10. Respondent Advanced Litigation Services, LLC is engaged in the business of debt collection and used American Legal Process to serve process on its behalf, and obtained default judgments in New York State with respect to actions and proceedings for which American Legal Process served process.

11. Respondent Jason J. Cafarella serves or served as corporate counsel to Advanced Litigation Services, LLC and used American Legal Process to serve process, and obtained default judgments in New York State with respect to actions and proceedings for which American Legal Process served process.

12. From 2004 to date, respondents each have used American Legal Process to serve process on at least 100 occasions.

13. Petitioner seeks an order and judgment, *inter alia*, ordering respondents

to identify those actions and proceedings for which they obtained default judgments on behalf of their clients where American Legal Process served process, and vacating those default judgments upon such terms as may be just unless respondents establish at the hearing, without reference to an American Legal Process affidavit of service, that service was effected properly pursuant to CPLR Article 3.

**STATUTORY BACKGROUND**

14. In New York State, an action is commenced by the filing of a summons and complaint with the court or county clerk. A proceeding is commenced by the filing of a notice of petition or order to show cause and petition. As used herein, the term summons and complaint includes notices of petitions and orders to show cause and petitions. The term action includes proceedings as well.

15. The plaintiff must serve the summons and complaint upon the defendant in the manner prescribed by the New York Civil Practice Law and Rules ("CPLR") Article 3.

16. The plaintiff may serve a natural person by delivery of the summons and complaint within the state to the defendant. CPLR § 308(1). This method is referred to herein as "actual service."

17. The plaintiff may also serve a natural person other than the defendant "by delivery of the summons [and complaint] within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and mailing the summons and complaint by first class mail to the person's last known residence or actual place of abode. CPLR § 308(2). This method of service is referred to herein as "substitute service."

18. Where the service cannot be made with due diligence by actual service, or substitute service, the plaintiff may affix the summons and complaint "to the door of either the actual place of business, dwelling place or usual place of abode within the state of the

person to be served" and mail the summons and complaint by first class mail to the person's last known residence or actual place of abode. CPLR § 308(4). This method of service is referred to herein as "nail-and-mail service."

19. While CPLR § 308(4) does not define the term "due diligence," typically courts have required three prior attempts at service made on separate days, at various times during the day, before a plaintiff may resort to nail-and-mail service.

**FACTS**

20. Since 2004, respondents used American Legal Process to serve process upon New York residents statewide on well over 150,000 occasions. For example, from January 1, 2007 through October 8, 2008 alone, American Legal Process served process on 102,126 occasions of which more than 101,000 were served at the request of respondents.

21. The venues for these actions and proceedings, which almost always involved suits against consumers for an alleged debt, were located in every county and all of the judicial districts located in New York State.

22. Respondents' process server, American Legal Process, prepared affidavits of service in which it, or its servers, detailed how they claimed to effect service of process, and provided the affidavits of service to the appropriate county clerk or court clerk, or to respondents, for filing.

23. In the great majority of actions for which American Legal Process served process, the defendant did not answer, and the respondents sought and obtained a default judgment pursuant to CPLR § 3215 on behalf of their clients.

24. To obtain such default judgments, the respondents filed, or had filed, American Legal Process affidavits of service that the defendant was properly served with process.

25. American Legal Process, or its individual servers, however, repeatedly

and persistently falsified its affidavits of service, and/or improperly and illegally notarized the affidavits of service.

26. Respondents' process server, American Legal Process, and its individual servers, repeatedly and persistently lied on affidavits of service that they had attempted, without success, to serve the defendant in the action on three occasions before resorting to nail-and-mail service.

27. Respondents' process server, American Legal Process, and its individual servers, repeatedly and persistently lied on affidavits of service that they had confirmed that the address to which they affixed the summons and complaint was the actual address of the defendant in the action.

28. Respondents' process server, American Legal Process, and its individual servers, repeatedly and persistently lied on affidavits of service that they had confirmed that the defendant in the action was not in active military service.

29. Respondents' process server, American Legal Process, and its individual servers, repeatedly and persistently lied on affidavits of service that the servers had mailed a copy of the summons and complaint to the defendant in the underlying action within twenty days after they served the summons and complaint by substitute or nail-and-mail service.

30. Respondents' process server, American Legal Process, and its individual servers, when using nail-and-mail service, repeatedly and persistently affixed the summons and complaint to an address that was not the address of the defendant in the action.

31. William Singler, the owner of American Legal Process, on a repeated and persistent basis, notarized the signatures of process servers who were not present at the time that he notarized the signature.

32. Respondents' or respondents' process server, American Legal Process, acting on their behalf, provided the falsified and/or illegally executed affidavits to county clerk or

court clerks.

33. Relying on these falsified and/or illegally executed affidavits of service which claimed that defendants had been properly served, courts in the all of the judicial districts granted thousands of default judgments which otherwise would not have been granted.

**HARM CAUSED BY USING FALSIFIED AFFIDAVITS OF SERVICE**

34. The harm to civil defendants subjected to default judgments where they have not been properly served , and to the courts that processed the defaults, is near incalculable.

35. Affidavits of service swear to the truthfulness of the information contained therein. Persons who are sued and the courts rely on the presumption that the affidavits are truthful. They all must be able to rely on the truthfulness of the affidavits for the courts to render decisions in those disputes, leaving no question as to the validity and fairness of those decisions. The integrity of the court system depends upon the confidence of the litigants and public that courts provide justice, and there can be no such confidence when there is doubt whether parties received proper notice to appear in court to be heard in the underlying case.

36. When false affidavits of service are relied upon to form the basis of a default judgment, a defendant is deprived of his or her opportunity to appear to answer the summons and complaint, and to prevent a wrongful default judgment. The harm to such defendants is substantial, becoming subject to judgments to which they had no opportunity to be heard and to present any cognizable defense, and suffering the significant collateral consequences of having judgments entered against them. And the courts will be burdened by service litigation as the parties dispute the validity of the service in contesting the legality of default judgment.

**CAUSE OF ACTION**

37. By reason of the foregoing, respondents have obtained thousands of

default judgments from courts in the judicial districts of New York State on behalf of their clients by fraud, misrepresentation, illegality, unconscionability, lack of due service, violations of law or other illegalities or where such default judgments were obtained in cases in which those defendants or respondents would be uniformly entitled to interpose a defense predicated upon but not limited to the foregoing defenses.

**RELIEF REQUESTED**

WHEREFORE, petitioner demands an order and judgment against respondents as follows:

A. Ordering respondents to identify those actions and proceedings commenced in the judicial districts of New York State (i) in which they appeared, as a party and/or counsel, and (ii) for which American Legal Process served the summons and complaint, or the notice of petition or order to show cause and petition, and (iii) for which a default judgment was taken, or for which an application for a default judgment is pending (referred to herein as "identified actions and proceedings");

B. Ordering respondents to notify the parties to the identified actions and proceedings ("interested parties") by first class mail to the last known residence, or actual place of business, using the notice form annexed as Exhibit N to petitioner's motion papers, of the pendency of this special proceeding, and of their right to be heard;

C. Requiring that respondents file with the Court a schedule of interested parties to which they sent the notice, including (i) the date each notice was sent, (ii) the name and address to which the notice was sent, (iii) the amount of the default judgment, (iv) the amount paid by the judgment-debtor after the default judgment was entered, if any;

D. Providing interested parties with an opportunity to be heard herein;

E. Vacating and setting aside default judgments taken in the identified actions and proceedings upon such terms as may be just, or denying a pending motion for a

default judgment, unless the party seeking to obtain or enforce a default judgment establishes at the hearing, without reference to an American Legal Process affidavit of service, that service was effected properly pursuant to CPLR Article 3;

F. With respect to those default judgments that are vacated and set aside, directing restitution in like manner and subject to the same conditions as where a judgment is reversed or modified on appeal;

G. Enjoining the respondents from seeking to obtain a default judgment against any individual defendant as to whom the respondent used American Legal Process to serve the summons and complaint, or the notice of petition or order to show cause and petition, until such time as the respondents can show evidence of service other than an affidavit of service provided by American Legal Process; and

H. For such other and further relief as the court deems just and proper; and it is further

Dated: New York, New York
July 9, 2009

ANN PFAU
CHIEF ADMINISTRATIVE JUDGE
NEW YORK STATE UNIFIED COURT SYSTEM

VERIFICATION

STATE OF NEW YORK )
COUNTY OF NEW YORK ) ss.:

ANN PFAU, being duly sworn, deposes and says: She is the Chief Administrative Judge of the New York State Unified Court System. She has read the foregoing petition and knows the contents thereof, and the same is true to her own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters she believes them to be true.

Ann Pfau
ANN PFAU

Sworn to before me this
9th day of July, 2009.

Haydee Marrero
Notary Public

HAYDEE MARRERO
NOTARY PUBLIC, State of New York
No. 01MA5067882
Qualified in Bronx County
Commission Expires 4-1-2010

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---------------------------------------------------------------------X

In the Matter of the petition of HONORABLE ANN PFAU, Chief Administrative Judge of the New York State Unified Court System,

Petitioner,

-against-

FORSTER & GARBUS, ET AL.,

Respondents.

---------------------------------------------------------------------X

Index No. 2009-8236

**ATTORNEY AFFIRMATION**

JAMES M. MORRISSEY, an attorney admitted to practice law before the courts of New York State, hereby affirms under penalties of perjury that:

1. I am an Assistant Attorney General in the office of Andrew M. Cuomo, Attorney General of the State of New York "(OAG"). I am responsible for the prosecution of this case and am fully familiar with the facts and circumstances thereof. I submit this affirmation in support of petitioners' order to show cause and verified petition. In the course of my duties I have conducted an investigation of the above-captioned matter. Unless otherwise indicated, I make this affirmation upon information and belief, based upon my investigation, a review of documents and other evidence on file with the Department of Law.

2. Petitioner brings this action to vacate default judgments taken statewide – usually against consumers alleged to owe a debt – that were obtained by fraud, misrepresentation, illegality and lack of proper service. The number of default judgments respondent seeks to vacate is likely in excess of 100,000.

3. ZMOD Process Corp., which was incorporated in June 2004, is a domestic corporation with its principal place of business located at 381 Sunrise Highway R5, Lynbrook, New York 11563. ZMOD Process Corp. does business as "American Legal Process" (referred to herein as "American Legal Process"). Respondents herein used American Legal

Process to serve process statewide.

4. On April 15, 2009, the OAG brought a special proceeding against American Legal Process in Erie County Supreme Court as a result of its deceptive, fraudulent and illegal business practices. The special proceeding is pending. William Singler, the owner of American Legal Process, was arrested by the OAG on a felony complaint on that same day effectively closing down American Legal Process.

5. American Legal Process maintained an electronic database using ProcessCase.com on which it kept track of the services it provided. The raw database is annexed hereto on a DVD as Exhibit A.

6. The Internal Audit Unit of the Unified Court System ("Internal Audit Unit) eliminated repetitive records and analyzed the data base with respect to the service of process in cases involving New York State courts from January 1, 2007 through October 8, 2008, about a 17-month period of the 57 months that American Legal Process was actively serving process. Thus, the numbers and statistics presented herein, while very dramatic, represent an analysis of less than one-third of the life of the company. The database analyzed by the Internal Audit Unit is referred to herein as the ProcessCase database, and is annexed hereto on a DVD as Exhibit B.

7. Annexed hereto as Exhibit C are copies of sample records of payments made by American Legal Process to servers. Exhibit C was obtained from American Legal Process.

8. Annexed hereto as Exhibit E are copies of sample worksheets prepared by American Legal Process servers from which American Legal Process prepared affidavits of service. Exhibit E was obtained from American Legal Process.

9. Annexed hereto as Exhibit J are copies of sample affidavits of service

prepared by American Legal Process. Exhibit D was obtained from American Legal Process.

10. Annexed hereto as Exhibit M are copies of selected corporate records with respect to American Legal Process.

11. Annexed hereto as Exhibit O are copies of sworn hand written statements of American Legal Process employees and/or servers Emily Katt, dated April 3, 2009, Mary Hughes, dated April 2, 2009, Megan Montreuil, dated April 2, 2009 and Linda Hand, dated April 2, 2009. The statements were taken by the OAG and are transcribed for the convenience of the Court.

12. Annexed hereto as Exhibit P are selected email messages to or from American Legal Process. Exhibit P was obtained from Google.

13. Respondents are attorneys and law firms, and two debt collectors who used American Legal Process to serve process.

14. American Legal Process served summonses and complaints, or a notice of petition or order to show cause and a petition ("summons and complaint") as follows: (a) a respondent provided American Legal Process with the summons and complaint to be served; (b) American Legal Process mailed the summons and complaint, with a copy of each, to the appropriate county clerk or court clerk with a check for the purchase of the index number; and (c) the clerk assigned and affixed the index number to the original summons and complaint and the copy, filed the original summons and complaint, and returned the copy to respondent. Affidavit of Sylvia Mahoney, Senior Court Office Assistant with the Buffalo City Court, sworn to on June 30, 2009 ("Mahoney Aff."), ¶¶ 2-3. On occasion, American Legal Process may have mailed the summons and complaint, with a copy of each, directly to the process server, with the check, and the process server delivered the pleadings to the clerk and purchased the index number.

15. American Legal Process then sent the summons and complaint out to one of its servers for service. American Legal Process used process servers across New York State, each responsible for certain territories. See Exhibit L-3 for a list of the top twenty servers and the judicial districts in which they operated. These top twenty served 84.83% of the 102,126 documents served by American Legal Process from January 1, 2007 through October 8, 2008. American Legal Process usually paid its servers only $4.00 to $8.00 on a per service basis. See Exhibit C for sample payment records.

16. After serving the summons and complaint, the server provided American Legal Process with a worksheet on which the server detailed how he or she claimed to have effected service. The worksheet requested no information with respect to mailing the summons and complaint where nail-and-mail or substitute service was used. Sample worksheets annexed hereto as Exhibit E.

17. American Legal Process prepared the actual affidavits of service from the worksheets provided to it by the servers. Among other things, the affidavits of service set forth the manner of service, and, where nail-and-mail service was used, (i) the attempted service dates, and (ii) details of a conversation with the defendant's neighbor confirming the defendant's address, and the fact that the defendant was not active in the military service. Even though there was no information on the worksheet with respect to mailing the summons and complaint, the affidavit set forth the date that the process server purportedly mailed the summons and complaint to the defendant. See Exhibit J for sample affidavits of service.

18. American Legal Process provided the affidavits of service to the appropriate county clerk or court clerk. Mahoney Aff., ¶ 4. In some cases, the server filed them directly with the clerks.

19. Where American Legal Process served a summons and complaint by so-

called "nail and mail" service, defendants defaulted 75.8% of the time. The OAG reviewed 235 cases in which respondents used American Legal Process to serve process and obtained default judgments. Affidavit of George Danyluk, Internal Audit Manager of the Unified Court System Internal Audit Unit, sworn to on July 15, 2009 ("Danyluk Aff.") ¶ 6. Almost all of the actions and proceedings were against consumers who were alleged to owe a debt, and the average default judgment was for $5,475.

## AMERICAN LEGAL PROCESS FALSIFIED AFFIDAVITS OF SERVICE

### American Legal Process' Policy to Attempt Service Only Once

20. American Legal Process' policy and practice, communicated to its servers, was to attempt service once, affix the summons and complaint to the door if no one answered the door, and fabricate two earlier attempts. This policy and practice is shown by the sworn handwritten statements from American Legal Process employees and/or servers annexed hereto as Exhibit O, and the Unified Court System Internal Audit Unit analysis of the ProcessCase database. This policy may have changed after Annette Forte, an American Legal Process server, was arrested in April 2008 for filing false documents.

### American Legal Process Servers at Two Places at the Same Time

21. The ProcessCase database shows that, on 3,512 occasions, American Legal Process servers served, or attempted to serve, documents on (i) different defendants (ii) at two different locations (iii) on the same date and (iv) at the same time. Danyluk Aff. ¶ 6. This, of course, is physically impossible. For ease of reference, petitioners refer to the service of process and the attempted service of process as "service attempts" or "attempted service". A table of the top twenty servers, who served 85% of the documents, appears below. The table is derived from the Danyluk Aff. ¶ 7(a)-(t).

| Name | Instances at 2 locations or more at same time | Instances at 3 or more locations (included in the previous total) |
|---|---|---|
| Raymond Bennett | 407 | 39 times at 3 locations at same time, 3 times at 4 locations at the same time, and once at 5 locations at same time |
| Dunham Toby Tyler | 839 | 39 times at 3 locations at same time, and once at 4 locations at same time |
| Gene Gagliardi | 450 | 18 times at 3 locations at same time, and twice at 4 locations at same time |
| Drefel Grimmett | 388 | 9 times at 3 locations at same time |
| Bill Matzel | 199 | 15 times at 3 locations at same time |
| John Hughes | 184 | 4 times at 3 locations at same time |
| Andrea D'Ambra | 168 | 6 times at 3 locations at same time |
| Greg Tereshko | 165 | 3 times at 3 locations at same time |
| Diana Lentz | 134 | 2 times at 3 locations at same time |
| Herb Katz | 125 | 9 times at 3 locations at same time |
| Bernard Holder | 81 | 1 time at 3 locations at same time |
| Adnan Omar | 69 | 1 time at 3 locations at same time |
| Annette Forte | 68 | 2 times at 3 locations at same time |
| Issam Omar | 51 | 1 time at 3 locations at same time |
| Dan Beck | 49 | |
| Beth Eubank | 42 | 1 time at 3 locations at same time |
| Michelle Miller | 42 | 4 times at 3 locations at same time |
| Harry Marinelli | 33 | 1 time at 3 locations at same time |
| Michael Pszczola | 10 | |
| Courtney Goldstein | 8 | |

**American Legal Process Servers at Two Places When Physically Impossible**

22. The ProcessCase database shows that American Legal Process servers,

repeatedly and persistently, claimed to be at different locations at different times when it was physically impossible to do so, given the time difference and the physical distance between the locations. Danyluk Aff., ¶ 9.

23. Examples from eleven American Legal Process servers, derived from the Danyluk Aff., ¶¶ 9-29, are given below. These servers served more than 49,300 documents from January 1, 2007 through October 8, 2008. Danyluk Aff., ¶ 30. For purposes of the table the terms "serves" includes attempts at service.

| Name | Service Attempts | Times Serving Process | Miles Required for Attempts/ Time Required | Examples |
|---|---|---|---|---|
| Isaam Omar | 77 on 6/16/08 | 6:09 am - 10:19 pm | 8,194<br>6 days, 4 hrs, 34 minutes | Eleven round trips b/t Kings & Cattaraugus Counties (400 miles apart); serves in Olean at 10:17 a.m. and 2 minutes later in Brooklyn |
| Isaam Omar | 69 6/17/08 (the next day) | 6:05 am - 8:28 pm | 10,771<br>7 days, 19 hrs, 58 minutes | Thirteen round trips b/t Kings & Chautauqua Counties (400 miles apart); serves in Brooklyn at 8:19 a.m. and 1 minute later in Jamestown |
| Drefel Grimmett | 85 on 9/1/07 | 6:00 am - 9:29 pm | 3,373<br>3 days, 2 hrs, 14 minutes | Serves in Cohoes at 8:02 p.m. and Wappinger Falls 7 minutes later (94 miles away) |
| Drefel Grimmett | 81 on 9/3/07 | 6:07 am - 9:39 pm | 3,199<br>3 days, 22 minutes | Serves in Albany at 7:07 a.m. and Ellenville 4 minutes later (84 miles away) |
| Annette Forte | 73 on 11/13/07 | 6:06 am - 9:33 pm | 3,859<br>3 days, 13 hrs, 8 minutes | Four round trips b/t Wayne & Chautauqua Country (150 miles apart); serves in Newark at 6:56 am and Bemus Point 6 minutes later (171 miles apart) |
| Annette Forte | 94 on 2/12/08 | 6:01 am - 10:01 pm | 2,036<br>2 days, 1 hr, 3 minutes | Serves in Lindley at 9:05 a.m. and Tonawanda 6 minutes later (146 miles apart) |

| Name | Service Attempts | Times Serving Process | Miles Required for Attempts/ Time Required | Examples |
|---|---|---|---|---|
| Gene Gagliardi | 88 on 8/15/07 | 6:02 am - 9:51 pm | 3,079<br>2 days, 21 hrs, 41 minutes | Serves in Richmond County at 4:02 p.m. and Putnam County 4 minutes later (82 miles apart) |
| Gene Gagliardi | 91 on 8/16/07 | 6:02 am - 9:46 pm | 2,640<br>2 days, 12 hours, 38 minutes | Serves in Orange County at 7:58 am and Richmond County one minute later (84 miles away) |
| Dan Beck | 92 on 3/7/08 | 6:06 am- 9:24 pm | 2,068<br>2 days, 8 hrs | Serves in Canajoharie at 3:37 pm and Saratoga Springs 2 minutes later (87 miles apart) |
| Dunham Toby Tyler | 86 on 9/24/07 | 6:28 am - 7:27 pm | 1,662<br>1 day, 18 hrs, 15 minutes | Serves in Baldwinsville at 3:01 pm and Dexter 6 minutes later (77 miles apart) |
| Raymond Bennett | 74 on 4/19/08 | 6:04 am - 9:10 pm | 1,313<br>1 day, 9 hours, 13 minutes | Serves in Cahoes at 6:14 am and Cairo 3 minutes later (55 miles apart) |
| Raymond Bennett | 69 4/21/08 | 6:04 am - 9:20 pm | 1,368<br>1 day, 11 hours, 18 minutes | Serves in Averill Park at 8:42 pm and Cairo 1 minute later (54 miles apart) |
| Bill Matzel | 72 9/24/07 | 8:03 am - 8:56 pm | 1,184<br>1 day, 9 hours, 35 minutes | Serves in Blossvale at 8:38 am and Little Falls 1 minute later (62 miles apart) |
| Bill Matzel | 67 2/21/08 | 8:01 am - 10:26 pm | 1,419<br>1 day, 15 hours, 47 minutes | Serves in West Winfield at 6:39 pm and Camden 4 minutes later (57 miles apart) |
| Harry Marinelli | 50 9/1/07 | 6:13 am - 4:41 pm | 1,662<br>1 day, 16 hours, 58 minutes | Serves in Saranac Lake at 7:16 am and Massena 2 minutes later (80 miles apart) |
| Harry Marinelli | 43 4/10/08 | 6:12 am - 8:51 pm | 1,194<br>1 day, 4 hours, 33 minutes | Serves in Parishville at 7:44 am and Cadyville 4 minutes later (89 miles apart) |

| Name | Service Attempts | Times Serving Process | Miles Required for Attempts/ Time Required | Examples |
|---|---|---|---|---|
| Michele Miller | 49 5/9/08 | 7:25 am - 9:10 pm | 1,697 1 day, 17 hours, 37 minutes | Serves in Watertown at 8:22 pm and Brusher Falls one minute later (83 miles apart) |
| Michele Miller | 50 5/13/08 | 7:38 am - 9:00 pm | 1,187 1 day, 7 hours, 33 minutes | Serves in Adams at 12:05 pm and Waddington 7 minutes later (94 miles apart) |
| Diana Lentz | 100 9/17/07 | 6:33 am - 8:15 pm | 1,172 1 day, 2 hours, 13 minutes | Serves in Depew at 7:26 am and Rochester 4 minutes later (69 milies apart) |
| Diana Lentz | 100 10/30/07 | 6:09 am - 10:12 pm | 1,848 1 day, 18 hours, 44 minutes | Serves in Rochester at 6:46 am and Niagara Falls 3 minutes later (95 miles apart) |

**American Legal Process Servers Attempt Service Before Documents Received**

24. The ProcessCase database shows that on 13,040 occasions, fifty-five of American Legal Process servers (including all of the top twenty) attempted to serve a document on a defendant before the document was transmitted from respondents to American Legal Process. This, of course, is physically impossible. Danyluk Aff., ¶ 31.

25. This is also shown by the email messages annexed hereto as Exhibit P, and the American Legal Process reports annexed hereto as Exhibit F.

**American Legal Process Servers Attempt Service Before Index Number Purchased**

26. The American Legal Process ProcessCase database shows that on 516 occasions, twenty-two of its servers attempted to serve a summons and complaint on a defendant before the plaintiff had purchased an index number and filed the summons and complaint with the appropriate clerk. Danyluk Aff., ¶ 32. It is physically impossible to serve a

summons and complaint, with an index number affixed to it, before the index number is purchased from the clerk.

27. This is also shown by the American Legal Process report and memos annexed hereto as Exhibit F.

**William Singler Falsely Claimed to Have Notarized Signatures**

28. The American Legal Process ProcessCase database shows that, from January 1, 2007 to October 8, 2008, William Singler, the owner of American Legal Process, claims to have notarized the signatures of process servers from across New York State on 73,395 occasions for an average of over 3,300 affidavits per month. Danyluk Aff., ¶ 39.

29. The analysis of the UCS Internal Audit Unit shows that Singler notarized the signatures of servers on dates when, according to American Legal Process ProcessCase database, it was physically impossible for him to do, or the claim is so highly improbable that it should not be credited.

30. The Internal Audit Unit looked at November 26-28, 2007, and examined 4 process servers for whom ProcessCase shows served process and had their signatures notarized by Singler. A summary of the results where both are claimed, created from the Danyluk Aff., ¶¶ 40-51, appears below.

| **Name** | **Activities Shown in Processcase database** |
|---|---|
| Annette Forte | The ProcessCase database shows that Annette Forte served process for more than 15 hours on November 26, 2007 and made a 14 hour round trip to Lynbrook to have her signature notarized. She served for more than 14 hours on November 27 and made the same round trip. Forte served for just under 16 hours on November 28 and made a third consecutive trip to Lynbrook. It was not physically possible for Forte to do both on any of these three days. |

| Name | Activities Shown in Processcase database |
|---|---|
| Beth Eubank | While it was physically possible for Beth Eubank to serve process for 10.5 hours on November 27, 2007, and make the 14.5 hour round trip to Lynbrook to have her signature notarized by Singler, she would have had to work for 25 ½ hours continuously to do so (from 8:00 p.m. on 11/26 until 9:35 on 11/27). |
| Raymond Bennett | While it was physically possible for Raymond Bennett to serve process and drive to Lynbrook on November 26, 27 and 28, 2007to have his signature notarized, he would have had to work an 18-hour, 19-hour and 15-hour workday respectively to do so. |
| Bethel Debman | While it was physically possible for Bethel Debman to serve process and drive to Lynbrook on November 27 and 28, 2007to have his signature notarized, he would have had to work and 17-hour and 18-hour workday respectively to do so. |

31. The UCS Internal Audit Unit also looked at ProcessCase for days that servers were especially active in serving process, and had their signatures notarized on the same day. A summary of the results, created from the Danyluk Aff., ¶¶ 52-66, appears below.

| Name | Date | Activities Shown in ProcessCase Database |
|---|---|---|
| Diana Lentz | 10/29/07 | It was not possible for Lentz to serve process for more than 13 hours, and drive to Lynbrook to have her signature notarized. |
| Diana Lentz | 1/30/07 | It was not possible for Lentz to serve process for more than 16 hours, and drive to Lynbrook to have her signature notarized. |
| Annette Forte | 2/11/08 | It was not possible for Forte to serve process for just under 16 hours, and drive to Lynbrook to have her signature notarized. |
| Annette Forte | 2/12/08 | It was not possible for Forte to serve process for 16 hours, and drive to Lynbrook to have her signature notarized. |
| Dan Beck | 1/3/08 | To both serve for just over 15 hours and have his signature notarized 25 times would have required a 21.5-hour work day. |

| Name | Date | Activities Shown in ProcessCase Database |
|---|---|---|
| Dan Beck | 1/4/08 | To both serve for just over 13 hours and have his signature notarized 24 times would have required a second consecutive 21.5-hour work day. |
| Bill Matzel | 9/24/07 | To both serve for just under 13 hours and have his signature notarized 26 times would have required a 23-hour work day. |
| Bill Matzel | 9/25/07 | To both serve for just under 13 hours and have his signature notarized would have required a second consecutive 23-hour work day. |
| Issam Omar | 6/23/08 | To both serve for just over 15 hours and have his signature notarized 60 times would have required a 19-hour work day. |
| Issam Omar | 6/24/08 | To both serve for just over 11 hours and have his signature notarized 36 times would have required a 15.5-hour work day, after his previous 19-hour work day. |
| Raymond Bennett | 2/26/08 | To both serve for just over 15 hours and have his signature notarized would have required a 21-hour work day. |
| Raymond Bennett | 2/27/08 | To both serve for just over 15 hours and have his signature notarized would have required a second consecutive 21-hour work day. |
| Raymond Bennett | 2/28/08 | To both serve for 15 hours and have his signature notarized 76 times would have required a third consecutive 21-hour work day. |

32. The evidence that Singler falsely claimed to have notarized his server's signatures also includes the handwritten sworn statements of American Legal Process employees and/or servers Emily Katt, Mary Hughes, Megan Montreuil and Linda Hand, annexed hereto as Exhibit O and an email annexed hereto as Exhibit P, page 2.

**American Legal Process Servers Lied about Confirming Addresses and Military Status**

33. American Legal Process, or its servers, prepared affidavits of service representing that, when the servers used nail-and-mail service, the server confirmed with a

neighbor of the address to which the process was affixed that: (i) the address was in fact the address of the named defendant, and (ii) the named defendant was not in military service (referred to herein as "confirming conversation"). The affidavits of service set forth the neighbor's address and the date of the confirming conversation. See Exhibit J for sample affidavits of service.

34. The evidence shows that, on a repeated and persistent basis, American Legal Process servers lied about having the confirming conversation, since the address of the neighbor set forth in the affidavit simply does not exist. The evidence includes an analysis of the addresses of neighbors with whom American Legal Process servers claimed to have the confirming conversation, Danyluk Aff., ¶¶ 34-36, an email annexed hereto as Exhibit P, page 1 and Exhibit K.

**American Legal Process Servers Affix Summons and Complaint to the Wrong Address**

35. The evidence shows that American Legal Process servers, on a repeated and persistent basis, affixed the summons and complaint to an address that was not the address of the defendant named in the underlying action when they used nail-and-mail service. The evidence includes the analysis of the OAG and the UCS, Danyluk Aff., ¶¶ 37-38, email annexed hereto as Exhibit P, pages 6, 8, 10, 11, and Exhibit D.

**American Legal Process Affidavits of Service Falsely State That the Server Mailed the Summons and Complaint after Claiming to Effect Service by Nail-and-Mail or Substitute Service**

36. American Legal Process affidavits of service falsely state that the individual server mailed the summons and complaint after claiming to effect service by nail-and-mail or substitute service.

37. This is shown by the handwritten sworn statements of American Legal Process servers and/or employees Emily Katt and Mary Hughes annexed hereto as Exhibit M, pages 1, 3, 5 and 7.

**CONCLUSION**

38. The Court should grant the petition in all respects.

Dated: Buffalo, New York
July 17, 2009

JAMES M. MORRISSEY
Assistant Attorney General